UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

MONIER RAHALL, an individual; and
BARRY TUCKER, an individual,

                        Plaintiffs,                    CASE NO.:

v.

YEHIA AWADA, an individual; GAMING EDGE
CONCEPTS, LLC, a Nevada Corporation; TIMOTHY
S. CORY, individually;  JOHN LYNCH, III, individually;
JOHN LYNCH, III, as Trustee for the JOHN LYNCH and
Kellie FUHR Family Trust; KELLIE FUHR, individually;
KELLIE FUHR, as Trustee for the JOHN LYNCH and
Kellie FUHR Family Trust; KEN SHIPALESKY,
an individual; ARLENE SHIPALESKY, an individual;
PATRICK LYNCH, an individual; VICKI LYNCH, an
individual; JOHN LYNCH, JR., as Trustee for the
LYNCH TRUST dated August 26, 1997; MICHAEL
LYNCH, an individual; JULIE LYNCH, an
individual; WILLIAM M. ERNST, as Trustee of the
William M. Ernst Revocable Trust; DAVID AUSTIN,
an individual; JOHN FUHR, an individual; GLENN
OHNO, an individual; TIFFANY OHNO, an
individual; CHRISTINA ORTIZ, an individual;
STEPHEN ORTIZ, an individual; LEIGHANN
WOLKOWSKI, an individual; and BRENT FUHR,
an individual, Does 1 through 20 are companies
formed under the laws of the State of Nevada or other
states who have conspired with, assisted or worked
with Defendants,

                        Defendants.

_____/

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiffs, Monier Rahall, an individual, and Barry Tucker, an individual, by and

through the undersigned Counsel, and hereby sues the following individuals and entities:

TIMOTHY S. CORY, individually; YEHIA AWADA, an individual; JOHN LYNCH, III,

individually, and in his capacity as Trustee for the JOHN LYNCH and Kellie FUHR Family

Trust; KELLIE FUHR, individually KELLIE FUHR, as Trustee for the JOHN LYNCH and

Kellie FUHR Family Trust; KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; PATRICK LYNCH, an individual; VICKI LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual, Does 1 through 20 are companies formed under the laws of the State of Nevada or other states who have conspired with, assisted or worked with Defendants and allege as follows:

## I.      JURISDICTION

1. This Court has jurisdiction pursuant to 28 U.S.C. §1332 based on diversity of citizenship and the amount in controversy, which exceeds $75,000.00. As described in Section III herein, diversity of citizenship exists because no Defendant is a citizen of the same state for which any Plaintiff is a citizen.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1338(b) based upon claims related to copyright, patent, and trademark rights.

3. This Court has jurisdiction pursuant to Fla. Stat. § 48.193(1)(b) because the Defendants have knowingly engaged in purposeful actions and telephonic, electronic, and written communications conducted in and directed to citizens residing in the State of Florida. Accordingly, the Defendants have subjected and availed themselves to the jurisdiction of State of Florida and its laws and jurisdiction. Specifically, the acts complained of herein were between a Florida resident and concern a business

relationship and contracts concerning a Florida Corporation. The original monies for

the deal flowed through Florida bank accounts for the Florida Corporation. Florida

was where the deal was negotiated and consummated. The Plaintiffs have been injured

by these events arising from and committed by the Defendants in the State of Florida.

To this extent, the defendants have certain minimum contacts with the State of Florida.

Thus, the exercise of jurisdiction over the defendants "does not offend traditional

notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 319 (1945)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

U.S. 408, 414 (1984).

## II.    VENUE

4. Venue for this proceeding is proper in the Middle District of Florida pursuant to 28

U.S.C. § 1391(2) as the subject matter and a substantial, material part of the operative

facts and events giving rise to the claim occurred in this District. A substantial portion of

the events giving rise to the claim occurred in the State of Florida because 1) the original

monies for the deal flowed through Florida bank accounts for the Florida Corporation, 2)

the State of Florida was where the deal was negotiated and consummated, and in so

knowingly consummating business transactions in the State of Florida, all parties hereto

availed themselves to the jurisdiction of Florida under Florida Statute §48.193. Thus, the

Plaintiffs have been injured by these events arising from and committed by the

Defendants in the State of Florida, and therefore, venue is proper in the Middle District of

Florida.

5. Plaintiff, Monier Rahall is a Florida resident and to that extent, hereby avails himself to

this Florida Court. As such, Venue is proper here.

6. To this extent, the Middle District of Florida is the proper and most convenient forum.

## III. PARTIES

### A.     PLAINTIFFS

7. MONIER RAHALL ("RAHALL"), an individual, the Plaintiff, is a resident/citizen of Tampa, Florida

8. BARRY TUCKER ("TUCKER"), an individual, the Plaintiff, is a resident/citizen of Alberta, Canada.

### A.     DEFENDANTS

9. TIMOTHY S. CORY ("CORY"), and individual, is a resident of/citizen of Nevada.

10. YEHIA AWADA ("AWADA"), an individual and a Defendant, is a resident/citizen of Nevada.

11. GAMING EDGE CONCEPTS, LLC, is a Nevada Limited Liability Company, managed by Yehia Awada

12. JOHN LYNCH, III ("LYNCH"), individually, and in his capacity as Trustee for the JOHN LYNCH and KELLIE FUHR FAMILY TRUST, and a Defendant, is a citizen of Alberta, Canada, and a resident of California.

13. KELLIE FUHR ("FUHR"), individually, and in her capacity as Trustee for the JOHN LYNCH and KELLIE FUHR FAMILY TRUST, and a Defendant, is a citizen of Alberta, Canada, and a resident of California.

14. JOHN LYNCH and KELLIE FUHR FAMILY TRUST ("LYNCH TRUST"), collectively herein will be referred to as "LYNCH TRUSTEES."

15. Collectively, the following parties will be referred to as "LYNCH GROUP" in this Complaint:

**A.**     KEN SHIPALESKY, an individual and a Defendant, is a resident/citizen of Alberta, Canada.

**B.**     ARLENE SHIPALESKY, an individual and a Defendant, is a resident/citizen of   Alberta, Canada.

**C.**     PATRICK LYNCH, an individual and a Defendant, is a resident/citizen of California, and is the uncle of Defendant LYNCH TRUST.

**D.**     VICKI LYNCH, an individual and a Defendant, is a resident/citizen of California.

**E.**     JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997, and a Defendant, is a resident/citizen of California.

**F.**     MICHAEL LYNCH, an individual and a Defendant, is a resident/citizen of California.

**G.**     JULIE LYNCH, an individual and a Defendant, is a resident/citizen of California.

**H.**     WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust and a Defendant, is a resident/citizen of California.

**I.**     DAVID AUSTIN, an individual and a Defendant, is a resident/citizen of California.

**J.**     JOHN FUHR, an individual and a Defendant, is a resident/citizen of Alberta, Canada.

**K.**     GLENN OHNO, an individual and a Defendant, is a resident/citizen of California.

**L.**     TIFFANY OHNO, an individual and a Defendant, is a resident/citizen of California.

**M.**     CHRISTINA ORTIZ, an individual and a Defendant, is a resident/citizen of California.

**N.**     STEPHEN ORTIZ, an individual and a Defendant, is a resident/citizen of California.

**O.**     LEIGHANN WOLKOWSKI, an individual and a Defendant, is a resident/citizen of Alberta, Canada.

**P.**     BRENT FUHR, an individual and a Defendant, is a resident/citizen of Alberta, Canada.

16. Does 1 through 20 are companies formed under the laws of the State of Nevada or other states who have conspired with, assisted or worked with Defendants.

### IV.     COMMON FACTS

17. At all times relevant hereto, JOHN LYNCH had power of attorney to act on behalf of and execute documents on behalf of: KEN SHIPALESKY; ARLENE SHIPALESKY; PATRICK LYNCH; VICKI LYNCH; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; MICHAEL LYNCH; JULIE LYNCH; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN; JOHN FUHR; GLENN OHNO; TIFFANY OHNO; CHRISTINA ORTIZ; STEPHEN ORTIZ; LEIGHANN WOLKOWSKI; and BRENT FUHR (*See* Exhibit "A").

18. INTEGRA ASSET MANAGEMENT, INC. ("INTEGRA"), negotiated the original deal for the purchase of 13.6% of TYCHE ENTERTAINMENT LLC ("TEL") for $1,926,000. INTEGRA received first $250,000 from JOHN LYNCH in 2004 (*See* Exhibit "A" –

Operating Agreement TYCHE ENTERTAINMENT LLC) and those funds went directly to AWADA to pay his gambling debts. JOHN LYNCH determined the corporation value, the created the proforma, and analyzed potential income. INTEGRA received original funds of $250,000 paid to AWADA and AWADA's debts, including markers and legal expenses.

19. MONIER RAHALL ("RAHALL"), was involved in the organization of, and was duly appointed the Manager of, TYCHE ENTERTAINMENT, LLC ("TEL") when it was organized in 2004 and remained its Manager ever since until it was dissolved in 2013. JOHN LYNCH specifically required that RAHALL was appointed as a managing member as a condition of his investment.

20. At one time, AWADA owned 86.4% of the membership interests in TEL, but such interests were pledged for a loan August 30, 2005 (*See* Exhibit "D"). AWADA completely forfeited the entirety of his interest on or about October 2008 in return for additional monies lent to AWADA.

21. At one time, LYNCH TRUSTEES owned a small portion (identified below) of the membership interests in TEL. On February 8, 2006 a letter was sent to LYNCH informing him that additional monies were owed pursuant to the Secured Promissory Note addendum of the Operating Agreement of TYCHE ENTERTAINMENT, LLC a Nevada Limited Liability Company the sum of Two Hundred Twenty Six Thousand Dollars ($226,000) together with interest thereon at the rate of eight percent (8%) per annum is due and payable eighteen (18) months from the date of this Note, which was signed the 14th day of August 2004. The Note was due and payable on February 14, 2006, and LYNCH failed to pay resulting in his forfeiture of the 10.4224% Membership

Interest in TEL. (*See* Exhibit "B"). Due to the failure of LYNCH to pay his contractual obligation that was owed to AWADA for the remainder of his membership, the membership was never issued.

22. LYNCH further refused to pay his portion of the legal fees and ongoing expenses to protect the assets of TEL.

23. TEL was engaged in general business activity that included the gaming industry in Las Vegas, Nevada.

24. TYCHE was organized for the purpose of writing and purchasing loans.

25. The LYNCH FAMILY members owned non-voting membership interests in TEL. Collectively, such interests totaled 3.1776%. As identified above, the LYNCH FAMILY relevant to this matter include, subject to amendment: KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; PATRICK LYNCH, an individual; VICKI LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; BRENT FUHR, an individual.

26. GAMING ENTERTAINMENT, INC. ("GEI") was a Nevada corporation owned by AWADA. In 2009, GEI filed a Chapter 11 petition under the Bankruptcy Code, which was later converted by the court to a Chapter 7 proceeding, in the United States

Bankruptcy Court, District of Nevada, which was styled, In re: Gaming Entertainment, Inc., and assigned Case No. 09-32258-IBR.

**AWADA Loan to LYNCH TRUST and Lynch Investment in TEL**

27.  TEL was organized for general business activity and to market the intellectual property created by AWADA.

28.  In 2004 shortly after TEL was organized, LYNCH TRUST, FUHR, and the LYNCH FAMILY became interested in investing in various patents and intellectual property that were owned by AWADA.

29. LYNCH TRUST and AWADA agreed that the LYNCH TRUST and the LYNCH FAMILY were to receive a collective total of 13.6% of the membership interests in TEL ("Lynch interest"), as follows: (1) The LYNCH FAMILY was to receive a collective 3.1776% for a capital contribution of $450,000.00; (2) LYNCH TRUSTEES were to receive a 10.4224% interest for a capital contribution of $1,476,000.00. LYNCH TRUST had power of attorney for FUHR, LYNCH TRUSTEES, and the LYNCH FAMILY. Attached hereto as Exhibit "A" is the TEL Operating Agreement which reflects the LYNCH GROUP interests, and LYNCH TRUST'S signature as power of attorney for FUHR, LYNCH TRUSTEES, and the LYNCH FAMILY.

30. Of the total LYNCH GROUP interest, LYNCH TRUSTEES' 10.4224% was used by LYNCH TRUST as security for a loan from AWADA for $226,000.00, representing only *a portion* of LYNCH TRUST'S capital contribution, and which was to be paid on or before February 14, 2006. Attached hereto as Exhibit "B" is a copy of the Secured Promissory Note reflecting the loan and LYNCH TRUSTS investment in TEL. At inception it was an investment *not* membership and would *not be* a membership interest

until he paid the Note in full. AWADA subsequently pledged the Note to TUCKER and MECHAN.

31. No membership certificates were issued to LYNCH TRUST because the party's contract provided that the interests would not be earned until full payment for the interests had been received.

### Receiver Negligence

32. JOHN LYNCH individually and the LYNCH FAMILY GROUP filed a lawsuit to dissolve the corporation TYCHE ENTERTAINMENT LLC and appoint a Receiver even though JOHN LYNCH had no rights or interest in the company at that time.

33. The appointed Receiver, TIMOTHY S. CORY conspired with LYNCH and AWADA to take rights from Plaintiffs and assert rights of Defendants that Defendants did not legally have. CORY, AWADA and LYNCH are personally liable because they willfully and deliberately breached their fiduciary duties to the Plaintiffs.

34. As a receiver, CORY possessed a special relationship of trust with the Plaintiffs. To this extent, CORY owed a fiduciary duty to the Plaintiff's. Here, CORY asserted rights against Plaintiff's assets that the Receiver did not have any right to exercise over the assets, thus breaching his fiduciary duty to the Plaintiffs. Specifically, CORY breached his fiduciary duty because he changed existing contractual relationships and improperly determined the rights between the parties pursuant to an existing contract reallocating interest in the property that was the subject of that contract. A receivership court may not impair the obligations of a contract, and a receiver may do nothing to impair a contract that is between the parties to the contract.

35. Plaintiffs' appealed CORY's appointment as receiver and this caused CORY to assert that if Plaintiffs dropped the appeal he would work with Plaintiffs and address their interest and concerns. CORY misled the Plaintiff's to believe if they dismissed their appeal, he would uphold his fiduciary duty as a trustee to protect the interest of all shareholders and property of the in the receivership belonging to the Plaintiffs.

36. LYNCH owed a fiduciary duty to the Plaintiffs acting as a Trustee for the LYNCH FAMILY GROUP exercising rights concerning the Plaintiff's company and assets even though LYNCH never obtained his membership certificates due to failure to pay the Note in full.

37. On February 14, 2006, LYNCH TRUST refused to repay the loan from AWADA, refused to respond to capital calls for TEL, and, instead, attempted to renegotiate the terms of the loan with no right of renegotiation. Because of LYNCH TRUSTS refusal to repay the loan to AWADA, AWADA exercised his right to take LYNCH TRUSTS interest in TEL. Attached hereto as Exhibit "C" are true and correct copies of the correspondence between LYNCH TRUST and AWADA regarding the LYNCH TRUST default and the forfeiture of his non-issued interest in TEL.

38. LYNCH then used legal coercion and abuse of process to extort Plaintiffs and/or effect conversion of the assets by filing several lawsuits (*Gaming Entertainment, Inc* Adversary Proceeding No. 11-1092-LBR; Patrick Lynch, individually, and derivatively on behalf of TYCHE ENTERTAINMENT, LLC, a Nevada Limited Liability Company, Plaintiff, vs. YEHIA AWADA, an individual, and GAMING ENTERTAINMENT, INC., a Nevada corporation; Case No. A563417) wherein he was not successful, until the last lawsuit wherein he not only petitioned for a Receiver, his lawyers chose the Receiver for his bias

views concerning religion and ethnicity and therefore they knew he who would be open to conspiring with LYNCH against TYCHE ENTERTAINMENT LLC.

39. Further, Defendants were judicially estopped from continuing to venue shop when previous courts had already heard the issue and denied the relief requested. (*ShuffleMaster, Inc. v. AWADA,* Case No. 2:04-cv-980 - United States District for the District of Nevada; *Gaming Entertainment, Inc*., Case No. 09-32258-IBR -United States Bankruptcy Court District of Nevada; *Gaming Entertainment, Inc* Adversary Proceeding No. 11-1092-LBR; Patrick Lynch, individually, and derivatively on behalf of TYCHE ENTERTAINMENT, LLC, a Nevada Limited Liability Company, Plaintiff, vs. YEHIA AWADA, an individual, and GAMING ENTERTAINMENT, INC., a Nevada corporation; Case No. A563417;; YEHIA AWADA Chapter 11 bankruptcy as Case No. 09-30585).

40. CORY engaged in communications with LYNCH concerning the assets, yet LYNCH had no rights to the assets.

41. TUCKER, MECHAN and RAHALL had discussions with CORY and even offered to come to Las Vegas, attempting to set up an appointment to see CORY, but CORY refused to give them a meeting even though they held all the interest in the membership.

42. Recently Plaintiffs discovered that the reason the Receivership was closed prematurely was that CORY had a scheduled mission for his Church wherein he would be gone for a substantial period of time. Rather than have another Receiver take over and properly administer the case, and review and/or investigate the status and posture of the case, assets and ownership of assets through proper due diligence, CORY closed case under

protest of the Plaintiffs. CORY improperly and prematurely closed the Receivership and closed the case to the detriment of Plaintiffs.

43. CORY could not leave the case to another Receiver because he knew it would expose his bias and fraudulent acts.

44. JOHN LYNCH on behalf of TYCHE ENTERTAINMENT LLC took the payments from 2006-2007, and AWADA personally took the IGT payments from 2007-2009 and neither ever accounted for the payments.

45. CORY did not properly investigate the assets and liabilities of the parties prior to filing final tax forms. As tax matters can be complicated for companies, CORY was required to properly review the business financial records and properly report all financial matters to the IRS. CORY failed to consult with the constituents to ascertain the financial matters.

46. CORY gave Plaintiffs the run around or acknowledge their interests that were already heard and granted by another court, and therefore, improperly participated in LYNCH'S actions and fraudulently and negligently converted the assets and or exercised dominion and control over the assets and is therefore liable for his negligence.

47. Further, because the bankruptcy court had already heard and adjudicated the rights of the parties, CORY was judicially estopped from making a different determination or undermining those rights.

48. Further, receivers do not have the right to change the contractual agreements between the parties, however CORY did just that.

49. Prior to the receivership, TUCKER and MECHAN paid the bankruptcy trustee in AWADA's personal bankruptcy and his Corporate bankruptcy and legal fees to preserve the assets in patent litigation and in litigation against LYNCH. Without this, there would

be no assets to place in receivership. Despite this fact, CORY refused to recognize who preserved the assets and the cost of that preservation. Instead, CORY recognized AWADA and LYNCH as the parties who had the legal rights to the assets which was an improper reallocation of the legal rights to the assets.

50. In addition, in several other cases, LYNCH individually and as Trustee asserted the same rights that were asserted with CORY, that other Courts denied. Therefore, CORY and the Court in that case were judicially estopped from relitigating the issue.

51. As of the end of February 2006, LYNCH TRUST forfeited all rights to membership interests in TEL issued because the secured Note was never paid ("LYNCH TRUST forfeiture"). (See Exhibit. "C")

52. CORY is not entitled to judicial immunity for his actions in the course of performing his responsibilities as a receiver in an official capacity because a receiver is personally liable for an improper distribution of assets and creating and filing false tax statements without seeking any tax counsel, or records of the business financial matters, causing financial harm to the Plaintiffs.

53. Pilfering a company's assets, taking unlawful control of assets with no present right to those assets, or conversion of assets not under the control or dominion of receiver is not normally performed by a court-appointed receiver. Whether a public official is entitled to absolute immunity is a question of law. This is a threshold question that must be determined prior to any predetermination of immunity.

54. Plaintiffs state CORY was acting outside the scope of his legal rights and duties and acted in conspiracy with LYNCH and AWADA, parties with no right to the assets. LYNCH wanted a Receiver appointed, and initially AWADA did not, however AWADA

agreed later due to CORY reallocation of the contractual interest, when CORY had no right to do so.

55. CORY refused to speak with or acknowledge the rights of Plaintiffs as lawful owners of the assets.

56. CORY in performance of his duties conspired to seize control of TYCHE ENTERTAINMENT LLC and its assets and defraud its members.

57. CORY is personally liable for his gross negligence and breach of fiduciary duties in wasting and seizing control of valuable assets and acting outside scope of receivership resulting in their loss and diminution in value, by not recognizing other Superior Court orders directing ownership of the assets and contracts between the parties that were outside the legal authority of CORY to cancel or intervene in those business agreements.

58. CORY led the Court to error in misstating the contractual rights of the parties and therefore caused legal damages and actual damages to the Plaintiffs under color of law.

**Tucker Loan to AWADA and AWADA Default.**

59. In 2005, AWADA was involved in extensive and expensive litigation over certain of his patents. In need of money, Defendant AWADA approached TUCKER and MECHAN for a loan to help him finance his litigation costs. Attached hereto as Exhibit "D" are true and correct copies of the agreement and pledge agreement between TUCKER and AWADA.

60. TUCKER and MECHAN provided AWADA an aggregate total amount of approximately $2,500,000 million dollars from 2002 to present time, including paying hundreds of thousands of dollars in legal bills that AWADA never paid back. The source of the funds originated in Canada.

61. Plaintiffs are suffering ongoing damages for interest on loan and continuing personal expenses paid for AWADA of at least $580,000 since 2009 to present time.

62. Under the original Note AWADA borrowed $1,750,000.00 from TUCKER and MECHAN, and the Note allowed for and provided for increases. AWADA improperly diverted $900,000 of the funds to himself without permission or authorization.

63. At the time of and as security for the loan, TUCKER and MECHAN took physical possession of AWADA's Membership Certificate in TEL as part of the security for the loan.

64. In or about October 2008, AWADA forfeited his Membership Interest in TEL to TUCKER along with the rights to all of AWADA's intellectual property when he failed to repay the loan from TUCKER. Consequently, because LYNCH TRUST had already forfeited his Membership Interest in TEL to AWADA, AWADA in turn forfeited 96.8224% of the membership Interests in TEL to TUCKER in or about October 2008.

**TYCHE's Ownership of Intellectual Property**

65. As the owner of the only voting interests - 96.8224% of the membership interest in TEL, and thus, 96.8224% owner of all of Plaintiff TEL's ownership of the intellectual property, TUCKER transferred 96.8224% of TEL's membership interests to TYCHE.

66. All the intellectual property owned by TEL is identified in the Operating Agreement of TEL, and none of that intellectual property has ever been transferred to any other person or entity by any person or entity. *See* Exhibit "A," Oper. Agmt.

**AWADA's Judicial Admissions and Sworn Statements and/or Testimony**

67. On October 3, 2008, AWADA was deposed in the litigation involving the patent rights, in the matter of *ShuffleMaster, Inc. v. AWADA*, Case No. 2:04-cv-980, a case which was

pending in the United States District for the District of Nevada. In that deposition, AWADA testified under oath that he had transferred his interests in TEL and all his intellectual property to Tucker. Attached hereto as Exhibit "E" are true and correct copies of an Excerpt of the Transcript of AWADA's Deposition reflecting Defendant AWADA's forfeiture of his Membership Interests in TEL.

68. In addition to the GEI bankruptcy, AWADA filed a personal Chapter 11 bankruptcy in October 2009 in the United States Bankruptcy Court, District of Nevada, which was assigned Case No. 09-30585 ("AWADA bankruptcy").

69. In the AWADA bankruptcy, on his Schedule B-Personal Property, AWADA was required to list the personal property he owned. Under penalty of perjury, AWADA listed as only his interest his interest in GEI. AWADA did not identify any interest in TEL as owned by him. Attached hereto as Exhibit "F" is a true and correct copy of AWADA's Schedule B-Personal Property.

70. At his section 341 Meeting of Creditors in the 2009 AWADA bankruptcy, AWADA in his sworn testimony confirmed that the information contained in his Schedules was true and accurate. Attached hereto as Exhibit "G" is an Excerpt of the transcript from AWADA's 341 Meeting testimony in his personal bankruptcy.

71. In late 2009, AWADA's deposition was also taken in the GEI bankruptcy, and at such deposition, AWADA testified under oath that all the intellectual property at issue was owned by RAHALL and TUCKER.

72. In 2013, also in the GEI bankruptcy, AWADA admitted in a second deposition on April 3, 2013, that the intellectual property was owned by RAHALL and TUCKER. Attached

hereto as Exhibit "H" is a true and correct copy of an Excerpt of AWADA's April 3, 2013 deposition transcript.

### AWADA's Fraudulent Actions in Corporate Changes

73. In July 2013, AWADA began filing changes in the Registered Agent, Managing Members, and Managers of TEL. These filings were done without any authorization by managing members of TEL. In those filings, AWADA variously appointed himself or his accountant as the Registered Agent of TEL. AWADA also removed RAHALL as Manager of TEL and substituted himself. AWADA also added his family members as Managing Members of TEL. When the false filings were corrected, AWADA would immediately re-file his false documents.

### LYNCH TRUST'S Fraud Upon the Courts Through the Use of PATRICK LYNCH, his Uncle, as a Strawperson (Wrongful State Suit)

74. Over two years after LYNCH TRUST forfeited his right to all TEL membership interests, in or about May of 2008, PATRICK LYNCH, the uncle of LYNCH TRUST herein, filed a state court derivative suit in the District Court of Clark County, Nevada, although PATRICK LYNCH was a member of the LYNCH FAMILY, they held only a small portion of *non-voting* interests in TEL.

75. JOHN LYNCH used PATRICK LYNCH to file the lawsuit because JOHN LYNCH knew that he did not hold any membership interest as they were forfeited when he failed to meet the contractual obligations to obtain his interest. The state suit was styled, PATRICK LYNCH, individually, and derivatively on behalf of TYCHE ENTERTAINMENT, LLC, a Nevada Limited Liability Company, Plaintiff, vs. YEHIA

AWADA, an individual, and GAMING ENTERTAINMENT, INC., a Nevada corporation; DOES 1-20; and DOE CORPORATIONS 1- 20, inclusive, Defendants, which state suit was assigned Case No. A563417 ("State Suit").

76. PATRICK LYNCH, as a member of the non-voting interests had no authority to file a lawsuit, and JOHN LYNCH conspired with his uncle, PATRICK LYNCH to file the State Suit as a derivative action.

77. In the State Suit, PATRICK LYNCH (without authority to do so on behalf of TEL) asserted claims for breach of fiduciary duty, conversion, breach of contract, contractual breaches of specified duties, fraudulent misrepresentation, accounting, declaratory relief, injunction, and dissolution of TEL.

78. PATRICK LYNCH also filed a derivative lawsuit (CASE NO. A563417, DISTRICT COURT CLARK COUNTY) which caused TYCHE ENTERTAINMENT LLC to incur substantial legal expenses while at the same time LYNCH created the expenses, he refused to pay his portion of those expenses. Therefore, PATRICK LYNCH and LYNCH TRUST undermined the stability of the company and breached his fiduciary of duty to the members. LYNCH never retained, paid, or controlled the attorneys in the State Suit. Instead, LYNCH TRUST herein retained, paid and controlled the attorneys.

79. During the course of the State Suit, LYNCH TRUST and FUHR attempted to pressure the Plaintiffs herein to issue 50% of the membership of TEL to LYNCH TRUST, FUHR, PATRICK LYNCH, and the remaining LYNCH FAMILY, specifically, and subject to amendment, KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; PATRICK LYNCH, an individual; VICKI LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; MICHAEL

LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual.

**Wrongful Federal Suit filed by LYNCH TRUST**

80. In 2011, LYNCH TRUST filed an adversary proceeding in the United States Bankruptcy Court District of Nevada, in the GEI bankruptcy, which was assigned Adversary Proceeding No. 11-1092-LBR, and styled, JOHN LYNCH, trustee for the JOHN LYNCH and KELLIE FUHR TRUST, Plaintiff, v. GAMING ENTERTAINMENT INC. a Nevada corporation; GAMING EDGE CONCEPTS, LLC, a Nevada limited liability company; TYCHE ENTERTAINMENT, LLC, a Nevada limited liability company; TYCHE, LLC, a Nevada limited liability company; GAMING ENT, LLC, a Nevada limited liability company; GAMING ENTERTAINMENT TYCHE, LLC, a Nevada limited liability company; YEHIA "JOE" AWADA, an individual; MONIER RAHALL, an individual; BARRY TUCKER, an individual; SHAWN MECHAN, an individual; DOES I through 10; and ROE corporation I through X, inclusive, Defendants ("Federal Suit").

81. The court dismissed the State Suit.

82. LYNCH TRUST'S 2011 Federal Suit asserted claims to the intellectual property based on his long-since forfeited right to issuance of a membership certificate in TEL, which was forfeited in 2006. (*See* Exhibits. "B" and "C").

83. LYNCH TRUST'S Federal Suit asserted causes of actions under the avoidance and recovery powers provided to bankruptcy trustees under the United States Bankruptcy Code, although he was not a bankruptcy trustee, particularly in the GEI bankruptcy.

84. On August 29, 2013, the court in the GEI bankruptcy approved a settlement between the GEI bankruptcy trustee wherein the trustee assigned all GEI's bankruptcy estate's interest in the intellectual property. Attached hereto as Exhibit "I" is a true and correct copy of the GEI bankruptcy court's August 29, 2013 order approving the settlement. In that Agreement TYCHE LLC was assigned all the rights against AWADA and the corporation.

85. The settlement was opposed by LYNCH TRUST and AWADA in the GEI bankruptcy, so both were aware of the settlement and the bankruptcy court's ruling.

86. Neither LYNCH TRUST nor AWADA appealed the GEI bankruptcy court's order.

87. CORY, acting as Receiver and under color of law, willfully ignored a Superior Court's Order concerning the authority and true ownership of the membership shares and parties who were legally recognized to bind the companies to a settlement agreement.

88. The Bankruptcy Court recognized RAHALL, MECHAN, TUCKER as the parties with the legal authority to enter into the Settlement Agreement and bind the companies. AWADA and LYNCH objected to that Settlement Agreement and RAHALL, MECHAN, and TUCKER'S authority, however their objections were overruled, and the Court denied their relief and entered the final Order. No appeal was taken from that Order; therefore, this matter was fully adjudicated, and CORY possessed no legal right or authority to reverse or ignore the Federal Bankruptcy Courts ruling on this issue of ownership rights.

89. AWADA and LYNCH did not appeal the Bankruptcy Court Order and therefore this matter was final and fully adjudicated.

## AWADA'S Perjury

90. Notwithstanding AWADA's prior sworn testimony and judicial admissions filed in courts as set forth above, on August 12, 2013, AWADA filed an Opposition to the GEI bankruptcy trustee's motion to approve settlement, a copy of which is attached hereto as Exhibit "J" ("AWADA Opposition"). In AWADA's Opposition, filed in 2013, AWADA asserts that "[he] is the majority owner of TYCHE Entertainment, LLC [TEL] and … has operated under the assumption that" his interest "as the owner" of TEL was being represented (See Exh. "J," Oppos. ¶24), and indicates his consent is necessary for the assignment of any intellectual property owned by TEL (See Exh. "J," Opps. ¶26).

91. In AWADA's sworn Declaration dated August 12, 2013 and filed with the AWADA Opposition, he declares under penalty of perjury that he owns membership interests in TEL (See Exh. "J," Declar. ¶¶ 7, 9, 10)

## LYNCH TRUST'S Perjury

92. JOHN LYNCH and KELLIE FUHR (JOHN LYNCH's wife) forfeited their membership interest in February 2006 acting as Trustee of the LYNCH TRUST. On August 20, 2013, JOHN LYNCH executed and filed a sworn Affidavit in the Federal Suit wherein JOHN LYNCH stated "I am a managing member, one[-]third voting member, and shareholder in TYCHE Entertainment, LLC [TEL]…" Attached hereto as Exhibit "K" is a true and correct copy of the Affidavit of JOHN LYNCH, III in Support of AWADA's Opposition to Settlement Agreement. The bankruptcy Court (CASE # BK-S-09-32258- LBR) did not recognize JOHN LYNCH and KELLIE FUHR individually, or as Trustee of the LYNCH

TRUST as having any legal rights to assert on behalf of TYCHE ENTERTAINMENT LLC.

### Threats by LYNCH TRUST and FUHR on behalf of
### LYNCH TRUST, FUHR and the Lynch Family

93. Notwithstanding that LYNCH TRUST and FUHR'S interests and certificates in TEL never issued as of the end of February 2006, LYNCH, LYNCH TRUST, and FUHR made numerous threats to Plaintiffs in relation to such interests.

94. In the GEI bankruptcy, LYNCH, LYNCH TRUST, and FUHR attempted to cause the bankruptcy trustee to file baseless RICO claims against RAHALL and attempted to coerce the bankruptcy trustee to bring such claims using false statements and slanderous statements. In relation to such assertions, FUHR was attempting to intimidate RAHALL using legal coercion and conspiring with the Trustee against the rights of RAHALL, TUCKER and MECHAN 19 U.S.C. § 241. Therefore, LYNCH, LYNCH TRUST, and FUHR acted unlawfully conspiring with two or more persons to conspire to threaten and/or intimidate a person exercising their rights and privileges secured to them by the Constitution or the laws of the United States. This includes contract rights and property rights.

95. FUHR and LYNCH were in fact committing hate crimes against RAHALL as they made false statements which amounts to hate statements directed at RAHALL based on his religion and ethnicity. For instance, statements were made that RAHALL was backwards because of his Lebanese ethnic background and Muslim religion and thinks women are inferior and that is why he refused to negotiate with FUHR (the "Lebanese Muslim attacks"). "The FBI defines a hate crime to be, "…a criminal offense committed against a

person, property or society which is motivated, in whole or in part, by the offender's bias against a race, religion, disability, sexual orientation, or ethnicity/national origin."

96. The hate statements violated the Thirteenth Amendment rights of RAHALL and were made in the course of litigation and to threaten legal actions, which is legal coercion. Under this section penalizing conspiracy to deprive person of rights secured to him by the federal Constitution or laws, the crime is completed by the agreement, and the statements and actions taken were overt, however no showing of an overt act is necessary.

97. Further, RAHALL'S character was slandered by JOHN LYNCH and KELLIE FUHR who made statements regarding charges by his ex-wife that were unsubstantiated and dismissed. Even after dismissal of those claims, and finding of innocence, LYNCH and FUHR continued to insinuate that RAHALL is dangerous to third parties in Canada associated with LYNCH and FUHR.

98. RAHALL was coerced, intimidated, and threatened in violation of his Thirteenth Amendment rights and is entitled to treble damages, an injunction, and legal fees against the Defendants FUHR and LYNCH.

**Fraud Offenses**

99. The fraud was the intentional perversion of the truth for the purpose of inducing CORY, in reliance upon it, to take away the legal rights of TUCKER, RAHALL, and MECHAN.

100.    In fact, TUCKER and MECHAN were swindled out of their property rights as LYNCH and FUHR, conspiring with CORY caused conversion of their property rights in TYCHE ENTERTAINMENT LLC and the asserts held by that company.

101.    Upon information and belief, the named Defendants obtained money and/or property belonging to TUCKER and MECHAN by false pretenses.

102.     The affidavits attached hereto as Exhibit "M" which filed in bankruptcy case

demonstrate that LYNCH committed the fraud using false statements of fact. While

LYNCH did not forge documents, the affidavits of statements of interest, which were

false, accomplished the same goal as forging ownership documents.

**Extortion / Blackmail**

103.     AWADA, FUHR and LYNCH used extortion and blackmail against RAHALL,

TUCKER and MECHAN by threatening to report them, which amounted to threats to

make false statements to the FBI and IRS to get RAHALL, TUCKER and MECHAN to

back off asserting his rightful interest in the assets of TEL.

104.     AWADA, FUHR and LYNCH also used the same false statements against

TUCKER, RAHALL and MECHAN to influence and conspire with CORY in the

dissolution TEL.

105.     "Extortion / Blackmail" was used by FUHR, LYNCH, and AWADA to obtain

money and property from RAHALL, TUCKER and MECHAN through blackmail,

intimidation and misuse of authority, threat of criminal prosecution, and the destruction

of the victim's reputation or social standing, or through other coercive measures.

106.     AWADA sent texts to RAHALL on September 23, 2017 which clearly

demonstrate intent to blackmail and threaten RAHALL to obtain financial assets.

107.     The text stated: "Other than the FBI WHOM are very familiar with the name

MONIER RAHALL. I'm sure U also may want to look up & get familiar with the IRS

form 253. I have it all filled out and ready to be delivered to the wright individual. Do

remember this name. rolling tourley, he's a friend off mine. He is what you call a

whistleblower & the worst nightmare for a guy like you." "Look here you sick lowlife

psychopath……. I need you to turn over our house title so we may be able to fix and insure our home."

108.     MECHAN and TUCKER put up the money for the house, and AWADA did not buy the house, never owned the house, and has no right to the house. Therefore, all statements made in the text demanding that RAHALL turn over the title to the house were threats made for the purposes of extortion.

109.     TUCKER and MECHAN continued to incur expenses for AWADA to live in the house, and in fact he's lived there for ten years. Therefore, TUCKER and MECHAN paid expenses and carrying cost of the house in the amount of $580,000 over the last ten years has been added to the Notes/line of credit owed to MECHAN and TUCKER.

110.     In addition, TUCKER and MECHAN paid off two markers owed to the Palms Casino and Resort totaling $112,000 which was also added to the Notes/line of credit owed to MECHAN and TUCKER.

**Intimidation**

111.     FUHR, LYNCH, and AWADA used intimidation to unlawfully place Plaintiffs to fear prosecution for crimes that they did not commit. In fact, these Defendants have now carried out their agenda and caused investigations for baseless crimes.

112.     This has caused substantial damages to Plaintiffs.

113.     FUHR, LYNCH, and AWADA told Plaintiffs that they should be worried because RICO claims would be brought against them, and they would be reported to the FBI and IRS. These statements by FUHR were made and published and communicated to other business associates of Plaintiffs.

114.     Clients and prospective business associates have been able to access those statements and Plaintiffs were harmed due to those statements being publicly disseminated.

115.     In numerous telephone conferences between LYNCH TRUST, FUHR, RAHALL, and TUCKER, FUHR attempted to strong arm Plaintiffs demanding 50% of the shares of TEL, and when RAHALL refused, FUHR stated that RAHALL was backwards because of his Lebanese ethnic background and Muslim religion and thinks women are inferior and that is why he refused to negotiate with her (the "Lebanese Muslim attacks") and continued to threaten RICO investigations. LYNCH TRUST agreed with FUHR during such telephone conferences.

### Threats by AWADA

116.     Notwithstanding that AWADA no longer owned any membership interests in TEL as of 2008, to which he admitted and acknowledged on numerous occasions in judicial admissions, official sworn testimony, and sworn documents, AWADA made numerous threats to Plaintiffs in relation to such interests.

117.     From the year 2010 through August 28, 2017, AWADA sent constant texts to RAHALL and left continuing threatening voice mail messages for RAHALL through present day the threats continue (the "AWADA communications").

118.     In numerous of the communications, AWADA threatened RAHALL that he was going to government agencies, such as the Federal Bureau of Investigation ("FBI"), to report him and have him investigated.

### International Gaming Technologies and WMS Gaming, Inc.

27

119.     At all times material and relevant hereto, RAHALL, in his capacity as Manager of

TEL, engaged in business dealings with and had a business relationship with

International Gaming Technologies ("IGT") and WMS Gaming, Inc. ("WMS"), both in

connection with TEL's business activities in the gaming industry in Las Vegas, Nevada.

Specifically, TEL licensed intellectual property to IGT and WMS.

120.     LYNCH TRUST and AWADA sent numerous correspondence to IGT and WMS

in which libelous comments were made about RAHALL.

121.     LYNCH, LYNCH TRUST and AWADA have followed through on the threats

and RAHALL has now suffered damages that are yet to be determined.

122.     As an example, in correspondence dated October 14, 2013 to IGT, signed by both

LYNCH TRUST and AWADA, the following was communicated: "[Plaintiff] Monier

RAHALL set up TYCHE, LLC [TYCHE] for the sole purpose of defrauding IGT and the

legitimate owners of the licensed intellectual property of TYCHE Entertainment, LLC

[TEL]." "[Plaintiff] Monier RAHALL is not an authorized representative of TYCHE

Entertainment, LLC [TEC], and has no authority to speak for the company." "In fact, he

has a long history of perpetrating this type of fraud through the United States and

Canada." Attached hereto as Exhibit "L" is a copy of Defendants LYNCH TRUST'S and

AWADA's correspondence to IGT. The Bankruptcy Court Overruled LYNCH TRUST

and AWADA's motion in opposition to the final agreement with the Trustee in

Bankruptcy as the Bankruptcy Court found that RAHALL had the authority to complete

the Agreement. This Agreement was not appealed by LYNCH TRUST or AWADA.

TYCHE LLC was set up by MECHAN, not RAHALL therefore this was a false

statement for the purpose of damaging RAHALL'S relationship with IGT.

**The Lynch Family's Agreement with the Actions Taken by LYNCH TRUST and FUHR**

123.     The LYNCH FAMILY granted LYNCH TRUST power of attorney to act on their

behalf from the onset and has been complicit in all the actions taken by LYNCH TRUST

and FUHR. Specifically, at various times during the numerous litigation efforts, LYNCH

TRUST, FUHR, and the LYNCH FAMILY would be represented in the same action by

the same attorneys. At times, the parties would be represented by separate counsel (when

this issue was raised in the litigation), only to later return to being represented by the

same counsel.

124.     As discussed above, PATRICK LYNCH, on behalf of the LYNCH FAMILY, and

upon information and belief, in accordance with and under the control of LYNCH

TRUST, filed a derivative State Suit, although he was part of a group that owned only a

small portion of non-voting interests in TEL.

125.     Upon information and belief, LYNCH TRUST, retained, compensated, and

controlled the attorneys in the derivative State Suit.

126.     LYNCH TRUST had power of attorney to act on behalf of the LYNCH FAMILY.

(See Exh. "A," Oper. Agmt.)

127.     Defendants illegal acts resulted in conversion and diminution of value of property

owned by the Plaintiffs, and therefore caused damage to the Plaintiffs.

**COUNT I-TORTIOUS INTERFERENCE**

**AS TO PRIMARY ACTING DEFENDANTS**

128.     This is an action for tortious interference with a business relationship as to

TIMOTHY S. CORY, individually; JOHN LYNCH, III, individually; JOHN LYNCH,

III, as Trustee for the JOHN LYNCH and KELLIE FUHR FAMILY TRUST; KELLIE

29

FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and KELLIE

FUHR FAMILY TRUST; YEHIA AWADA, an individual; PATRICK LYNCH, an

individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26,

1997; hereinafter collectively referred to as the Primary Acting Defendants.

129.     Plaintiffs repeat and re-allege the facts and allegations in paragraphs 1 through

125 above, as if fully set forth herein.

130.     At all times material hereto, JOHN LYNCH, III, individually; JOHN LYNCH,

III, as Trustee for the JOHN LYNCH and KELLIE FUHR FAMILY TRUST; KELLIE

FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and KELLIE

FUHR FAMILY TRUST had the authority to and did act on behalf of KEN

SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH,

an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual;

WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID

AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual;

TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN

ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR,

an individual; hereinafter collectively referred to as the Aiding and Abetting Acting

Defendants.

131.     Plaintiffs had an existing business relationship with IGT and WMS. All major

contracts were negotiated by RAHALL on behalf of TYCHE ENTERTAINMENT LLC.

132.     Defendants knew or should have known of the existing business relationship with

IGT and WMS and knew or should have known of prospective business relationships

with IGT.

133.     Defendants engaged in concerted efforts to damage and interfere with the Plaintiffs' ability to negotiate with IGT and WMS and tortiously interfered with the Plaintiffs' advantageous business relationship with IGT and WMS.

134.     Defendants intentionally and unjustifiably interfered with the Plaintiffs' actual and prospective business relationship with IGT and WMS.

135.     Defendants acted with malice, moral turpitude, gross negligence, reckless indifference to the rights of others, wantonness, oppression and/or outrageous aggravation toward the Plaintiffs in relation to their actual and prospective business relationships with IGT and WMS.

136.     As a direct and proximate result of the misconduct of the Defendants, the Plaintiffs have and will continue to suffer and incur monetary damages.

**WHEREFORE,** the Plaintiffs demand judgment against the Defendants, namely TIMOTHY S. CORY, individually; JOHN LYNCH, III, individually; JOHN LYNCH, III, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; KELLIE FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; YEHIA AWADA, an individual; PATRICK LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997, for tortious interference with their actual and prospective business relationships with IGT and WMS, monetary damages, consequential damages, punitive damages upon a proper evidentiary showing pursuant to Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

**COUNT II-ABUSE OF PROCESS**

**AS TO DEFENDANTS**

137.    This is an action for abuse of process as to TIMOTHY S. CORY, individually; JOHN LYNCH, III, individually; JOHN LYNCH, III, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; KELLIE FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; YEHIA AWADA, an individual; PATRICK LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; hereinafter collectively referred to as the Primary Acting Defendants.

138.    Plaintiffs repeat and reallege the facts and allegations in paragraphs 1 through 125 listed above, as if set forth fully herein.

139.    At all times material hereto, JOHN LYNCH, III, individually; JOHN LYNCH, III, as Trustee for the JOHN LYNCH and KELLIE FUHR FAMILY TRUST; KELLIE FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and KELLIE FUHR FAMILY TRUST had the authority to and did act on behalf of KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual; hereinafter collectively referred to as the Aiding and Abetting Acting Defendants.

140. Notwithstanding the 2006 forfeiture of his right to have 10.4224% shares of TEL issued to Defendants, LYNCH TRUST litigated extensively against the Plaintiffs to gain ownership interests in TEL.

141. PATRICK LYNCH, as a non-voting member of TEL, did not have authority to bring a derivative action in the State Suit. In addition, upon information and belief, PATRICK LYNCH was acting for and on behalf of LYNCH TRUST and FUHR, as evidenced by LYNCH TRUST'S retaining, compensating and controlling the attorneys in the State Suit. PATRICK LYNCH acted as a strawperson for LYNCH TRUST, FUHR, and the remaining parties of the LYNCH FAMILY.

142. When the State Suit was dismissed, LYNCH TRUST filed the Federal Suit which had no merit because it asserted causes of actions for which only a bankruptcy trustee has the authority to bring.

143. Furthermore, the GEI bankruptcy court approved the settlement between the Plaintiffs herein and the GEI bankruptcy trustee, wherein all the rights and interests in the intellectual property were sold for $100,000.00, which sum was remitted to the bankruptcy trustee. Although neither LYNCH TRUST nor AWADA appealed the bankruptcy court order approving the settlement, they continued to illegally assert rights to interests in TEL.

144. PATRICK LYNCH conspired with LYNCH TRUST FAMILY to use him as a strawperson to wrongfully continue to assert an ownership interest in TEL.

145. Notwithstanding AWADA's 2008 forfeiture of his 96.8224% membership interests in TEL (AWADA's original 86.4% plus the un-issued and forfeited LYNCH TRUST interests of 10.4224%) and his numerous judicial admissions of such forfeiture,

33

AWADA has litigated extensively against the Plaintiffs to fraudulently establish some ownership in TEL.

146.    The continuous never-ending litigation by LYNCH TRUST family members and AWADA, and the fraudulent State Suit filed by PATRICK LYNCH as a strawperson for LYNCH TRUST and the other LYNCH Defendants, amount to illegal, improper, and/or perverted uses and abuses of process by such Defendants against the Plaintiffs.

147.    Even if LYNCH had an interest, as he asserted and is disputed by the Plaintiffs, LYNCH created litigation, costing the company substantial financial and reputational harm and therefore he would have been breaching his fiduciary duty to the members of TYCHE ENTERTAINMENT LLC.

148.    The illegal, improper and/or perverted abuses of process, slander, hate speech, intimidation and legal coercion by LYNCH TRUST family members, AWADA, and PATRICK LYNCH, and as to all other Defendants through LYNCH TRUST, FUHR, and PATRICK LYNCH, were for the ulterior motive to wrongfully acquire membership interests in TEL and receive monetary gain and this continues to present day.

149.    The illegal, improper and/or perverted abuses of process were a willful and intentional misuse and abuse. The willful and intentional misuse and abuse were the herein Defendants' primary motivation in causing process to issue and the process was not used to accomplish the result for which it was created, regardless of any incidental or concurrent motive of spite or ulterior purpose and this continues to present day.

150.    The ulterior motive or purpose was due to an unlawful objective or a collateral purpose. There was a perversion of the process after its issuance resulting in it being used

in a manner, or for a purpose, for which it was not intended by law and this continues to present day.

151.     Any events which transpired prior to the issuance of process are legally irrelevant to determining whether there was malice or an ulterior motive.

152.     As a result of the herein-named Primary Acting Defendants' actions, the Plaintiffs have suffered and incurred monetary damages.

**WHEREFORE**, the Plaintiff request judgment against all Primary Acting Defendants for abuse of process, and the resulting monetary damages, consequential damages, and punitive damages upon a proper evidentiary showing pursuant to Florida Statutes § 768.72, pre- and post- judgment interest, court costs, attorney's fees, and such other and further relief as this Honorable Court deems just and proper.

### COUNT III-DEFAMATION SLANDER, LIBEL PER SE AND PER QUOD
### AS TO LYNCH TRUST, FUHR, AND THE LYNCH FAMILY

153.     This is an action by Plaintiffs for defamation – slander, libel per se and per quod as to Defendants LYNCH TRUST, FUHR, and the Lynch Family.

154.     Plaintiffs repeat and reallege the facts and allegations in paragraphs 1 through 125 above, as if set forth fully herein.

155.     At all times material hereto, Defendant LYNCH TRUST had the authority to and did act on behalf of Defendant FUHR and the Lynch Family.

156.     FUHR made numerous and continuous slanderous verbal statements, to and in the presence of RAHALL and third parties, relaying false information, to wit: that Plaintiff RAHALL is a Lebanese Muslim who thinks women are inferior and thus, he will not negotiate with her, a woman. FUHR continued to spread lies and slander against

RAHALL regarding a domestic issue that was an unfounded allegation and dismissed even after the case was dismissed and RAHALL was vindicated.

157.     Defendant FUHR made numerous verbal slanderous statements to third parties, including the GEI bankruptcy trustee, that Plaintiff RAHALL had committed numerous RICO violations and needed to be investigated and had such claims brought against him.

158.     CORY actions by not recognizing all the legal fees and settlements paid to the U.S. Trustee, and all the expenses of defending the patents and defending against Lynch's frivolous lawsuits as legitimate expenses to TYCHE ENTERTAINMENT LLC he committed a crime and the actions were taken with malice, and deliberate attempt to harm the Plaintiffs and the ramifications of his actions caused consequential damages to the Plaintiffs.

159.     Defendant LYNCH TRUST made numerous false and defamatory libelous written statements to IGT and WMS concerning Plaintiff RAHALL. (See Exh. "L")

160.     Such statements were false, were unprivileged publications to a third party, represented negligence on the part of Defendants LYNCH TRUST and FUHR, and are actionable even in the absence of any special harm caused to Plaintiff RAHALL, but such statements resulted in injury to Plaintiffs.

161.     Defendant LYNCH TRUST'S libelous written statements and Defendant FUHR'S slanderous verbal statements, and their meanings were false. Defendants LYNCH TRUST and FUHR, at the time of making the written and verbal statements, knew they were false or had serious doubts as to their truth.

162.     Defendant LYNCH TRUST'S libelous statements and Defendant FUHR'S slanderous statements were defamation per se in that such statements imputed to Plaintiff

RAHALL criminal offenses that amount to felonies. In addition, such statements imputed to Plaintiffs conduct, characteristics, and/or conditions that are incompatible with the proper exercise of his lawful business, trade, profession, or office, which does not require proving damages or malice on the part of Defendants LYNCH TRUST and FUHR.

163.     Defendant LYNCH TRUST'S and Defendant FUHR'S statements are defamation per se since in its natural and proximate consequence the statements necessarily caused injury since the statements subjected Plaintiffs to hatred, distrust, ridicule, obloquy, contempt, and disgrace and malice. The occurrence of damage is presumed from the nature of the defamation.

164.     Defendant LYNCH TRUST'S and Defendant FUHR'S statements are defamation per se since in its natural and proximate consequence the statements necessarily caused injury since the statements made the Plaintiffs objects of "hatred, distrust, ridicule, contempt or disgrace" in the eyes of a "substantial and respectable minority of the community" so that Plaintiff RAHALL suffered injury in his "personal, social, official, or business relations."

165.     The statements amounted to hate speech against Plaintiffs and were used for purposes of legal coercion.

166.     Defendant LYNCH TRUST'S and Defendant FUHR'S statements are defamation per quod since the statements caused innuendo subjecting Plaintiffs to hatred, distrust, ridicule, obloquy, contempt, and disgrace and malice.

167.     Defendant LYNCH TRUST'S and Defendant FUHR'S statements were libel per quod and were made with knowledge of and/or with reckless disregard as to the falsity of

such statements, were intentional and malicious and/or, negligently made and were made and published without reasonable care to determine their falsity.

168.     Defendant LYNCH TRUST'S written libelous statements and Defendant FUHR'S verbal slanderous statements were an assertion of facts, not opinions.

169.     Defendant LYNCH TRUST'S libelous statements and Defendant FUHR'S slanderous statements were not absolutely privileged.

170.     Defendant LYNCH TRUST'S libelous statements and Defendant FUHR'S slanderous statements were not qualifiedly privileged because the libelous statements were not made in good faith and were not made with a good motive for the purpose of promoting or protecting the interest being discussed but rather were made in bad faith for the individual interest of Defendants LYNCH TRUST and FUHR and for the malicious purpose of damaging the reputation of Plaintiff.

171.     As a direct and proximate result of Defendant LYNCH TRUST'S libelous statements and Defendant FUHR'S slanderous statements, Plaintiff RAHALL has sustained direct and indirect pecuniary loss including, but not limited to, lost earnings, lost working time, loss of fees, business, reputation, personal growth, and loss of ability to earn money. Additionally, Plaintiff RAHALL has sustained shame, impairment of reputation and standing in the community, mental anguish, personal humiliation, hurt feelings, mental suffering, and injury to reputation and health, in the past and in the future. All the above damages are continuing and permanent in nature.

172.     Plaintiff RAHALL is entitled to punitive damages in this case as the Defendant LYNCH TRUST'S libelous statements and Defendant FUHR'S slanderous statements were made maliciously, willfully, wantonly, and with a reckless disregard for the rights

of Plaintiff RAHALL. The primary purpose in making the above statements was to indulge ill will, hostility and to harm the Plaintiff RAHALL. Defendant LYNCH TRUST'S libelous written statements and Defendant FUHR'S slanderous statements were designed to destroy the reputation of Plaintiff RAHALL for pecuniary gain and furtherance of the false campaign of Defendants LYNCH TRUST, FUHR, and the Lynch Family, at the unjust expense of Plaintiff RAHALL.

**WHEREFORE**, Plaintiff RAHALL demands judgment against Defendants LYNCH TRUST, FUHR, and the Lynch Family, for defamation – slander, libel per se and per quod, and the resulting monetary damages, consequential damages, punitive damages upon a proper evidentiary showing pursuant to Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, and such other and further relief as this Honorable Court deems just and proper.

## COUNT IV-DEFAMATION LIBEL PER SE AND PER QUOD
## AS TO DEFENDANT AWADA

173.     This is an action by Plaintiff RAHALL for defamation – libel per se and per quod as to Defendant AWADA.

174.     Plaintiff RAHALL repeats and realleges the facts and allegations in paragraphs 1 through 119 above, as if set forth fully herein.

175.     Defendant AWADA took overt action against Plaintiff RAHALL to create false accusations and cause investigations by government agencies based on those false statements, including the IRS and FBI, and made numerous false accusations about Plaintiff RAHALL to various government agencies, the full extent of which is still unknown.

176.     Defendant AWADA made numerous false and defamatory libelous written statements to IGT and WMS concerning Plaintiff RAHALL. (See Exh. "L")

177.     Such statements were false, were unprivileged publications to a third party, represented negligence on the part of Defendant AWADA, and are actionable even in the absence of any special harm caused to Plaintiff RAHALL, but such statements resulted in injury to Plaintiff RAHALL.

178.     Defendant AWADA's libelous written statements and their meanings were false, and Defendant AWADA, at the time of making the written statements, knew they were false or had serious doubts as to their truth.

179.     Defendant AWADA's libelous statements were defamation per se in that such statements imputed to Plaintiff RAHALL criminal offenses that amount to felonies. In addition, such statements imputed to Plaintiff RAHALL conduct, characteristics, and/or conditions that are incompatible with the proper exercise of his lawful business, trade, profession, or office, which does not require proving damages or malice on the part of Defendant AWADA.

180.     Defendant AWADA's statements are defamation per se since in its natural and proximate consequence the statements necessarily caused injury since the statements subjected Plaintiff RAHALL to hatred, distrust, ridicule, obloquy, contempt, and disgrace and malice. The occurrence of damage is presumed from the nature of the defamation.

181.     Defendant AWADA's statements are defamation per se since in its natural and proximate consequence the statements necessarily caused injury since the statements made the Plaintiff RAHALL an object of "hatred, distrust, ridicule, contempt or disgrace"

in the eyes of a "substantial and respectable minority of the community" so that Plaintiff RAHALL suffered injury in his "personal, social, official, or business relations."

182.    AWADA's statements are defamation per quod since the statements caused innuendo subjecting RAHALL to hatred, distrust, ridicule, obloquy, contempt, and disgrace and malice.

183.    AWADA's statements were libel per quod and were made with knowledge of and/or with reckless disregard as to the falsity of such statements, were intentional and malicious and/or negligently made and were made and published without reasonable care to determine their falsity.

184.    AWADA's written libelous statements were an assertion of facts, not opinions.

185.    Defendant AWADA's libelous statements were not absolutely privileged.

186.    AWADA's libelous statements were not qualifiedly privileged because the libelous statements were not made in good faith and were not made with a good motive for the purpose of promoting or protecting the interest being discussed but rather were made in bad faith for the individual interest of the AWADA and for the malicious purpose of damaging the reputation of RAHALL.

187.    AWADA, JOHN LYNCH and KELLI FUHR made false and slanderous statements to CORY to cause the CORY, under color of law, to persecute and take away Constitutional rights to property and contracts based religious and ethnic slander.

188.    LYNCH specifically chose CORY as the Receiver based on his personal beliefs and bias. Because of CORY's prejudice he was incapable of doing his job within the legal and Constitutional constraints which became apparent by his actions.

189.     Although they conspired together to accomplish this, the Receiver, acting as an officer of the Court and under color of law caused the courts to enter Orders that were void at inception due to fraud and legal coercion.

190.     As a direct and proximate result of AWADA's libelous statements, RAHALL has sustained direct and indirect pecuniary loss including, but not limited to, lost earnings, lost working time, loss of fees, business, reputation, personal growth, and loss of ability to earn money. Additionally, Plaintiff RAHALL has sustained shame, impairment of reputation and standing in the community, mental anguish, personal humiliation, hurt feelings, mental suffering, and injury to reputation and health, in the past and in the future. All the above damages are continuing and permanent in nature.

191.     Plaintiff RAHALL is entitled to punitive damages in this case as the Defendant AWADA's libelous statements were made maliciously, willfully, wantonly, and with a reckless disregard for the rights of Plaintiff RAHALL. The primary purpose in making the above statements was to indulge ill will, hostility and to harm the Plaintiff RAHALL. Defendant AWADA's libelous written statements were designed to destroy the reputation of Plaintiff RAHALL for Defendant AWADA's pecuniary gain and furtherance of his false campaign at the unjust expense of Plaintiff RAHALL.

**WHEREFORE**, Plaintiff RAHALL demands judgment against Defendant AWADA for defamation – libel per se and per quod, and the resulting monetary damages, consequential damages, punitive damages upon a proper evidentiary showing pursuant to Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, and such other and further relief as this Honorable Court deems just and proper.

## COUNT V-CIVIL EXTORTION PURSUANT TO FLORIDA STATUTES §§ 772.103 AND 772.104 AND CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT ("CRCPA") AS TO PRIMARY ACTING DEFENDANTS

192.     This is an action by Plaintiff RAHALL for Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and Civil Remedies for Criminal Practices Act ("CRCPA") against JOHN LYNCH, III, individually; JOHN LYNCH, III, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; KELLIE FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; YEHIA AWADA, an individual; PATRICK LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; hereinafter collectively referred to as the Primary Acting Defendants.

193.     Plaintiff RAHALL repeats and re-alleges the facts and allegations in paragraphs 1 through 125 above, as if set forth fully herein.

194.     At all times material hereto, the Primary Acting Defendants had the authority to and did act on behalf of KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual, hereinafter collectively referred to as the Aiding and Abetting Acting Defendants.

195.     The Primary Acting Defendants engaged in actions and made written and oral malicious threats accusing Plaintiff RAHALL of crimes and offenses, and maliciously threatened injury to Plaintiff RAHALL's reputation, to expose Plaintiff RAHALL to disgrace, with the intent to extort money, membership interests in TEL, and pecuniary advantage through such acquisitions, and with the intent to compel Plaintiff RAHALL to act by issuing membership interests in TEL to Defendants LYNCH TRUST and AWADA.

196.     The Primary Acting Defendants attempted to extort 50% of TEL's interests by threatening RICO claims investigations.

197.     To extort 86.4% of TEL's interest, the Primary Acting Defendants made threats through text messages and in voice mail messages, indicating Plaintiff RAHALL would be reported to government agencies, including the IRS and FBI, for some alleged imputed criminal offenses. Upon information and belief, Defendant AWADA contacted governments agencies, including the FBI, to encourage an investigation of Plaintiff RAHALL.

198.     All the Primary Acting Defendants' abuses of process as discussed in Count II above amounted to extortion in that the extensive and continuing litigation by the herein Defendants were intended to extort money, membership interests in TEL, and pecuniary advantage through such acquisitions.

199.     Pursuant to Fla. Stat. Ann. § 772.103, a "pattern of criminal activity" has occurred where the Primary Acting Defendants have engaged in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of

commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents.

**WHEREFORE**, Plaintiff RAHALL demands judgment against the Primary Acting Defendants for Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and Civil Remedies for Criminal Practices Act ("CRCPA"), and the resulting monetary damages, consequential damages, punitive damages upon a proper evidentiary showing, pre- and post- judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

### COUNT IV—PERJURY AND FRAUD UPON THE COURT AS TO PRIMARY ACTING DEFENDANTS AND RESULTING DAMAGES TO PLAINTIFF

200.    This is an action for perjury and fraud upon the courts as to JOHN LYNCH, III, individually; JOHN LYNCH, III, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; KELLIE FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; YEHIA AWADA, an individual; PATRICK LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; hereinafter collectively referred to as the Primary Acting Defendants.

201.    Plaintiffs repeat and re-allege the facts and allegations in paragraphs 1 through 125 above, as if set forth fully herein.

202.    The Primary Acting Defendants have knowingly set into motion an unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by EITHER (a) improperly influencing the trier of fact, OR (b) unfairly hampering the presentation of the opposing party's claim or defense.

203.     At all times material hereto, the Primary Acting Defendants had the authority to and did act on behalf of KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual; hereinafter collectively referred to as the Aiding and Abetting Acting Defendants.

204.     Defendant LYNCH TRUST has had unclean hands in connection with all his actions. Specifically, Defendant LYNCH TRUST, through numerous court filings and judicial admissions made in such actions, committed perjury and fraud upon the Federal Court system. Defendant Patrick Lynch, through numerous court filings and in acting as the strawperson for Defendant LYNCH TRUST in the filing of the State Suit, committed perjury and fraud upon the Federal Court system. Upon information and belief, as Plaintiffs believe will be fully established through discovery, the Lynch Family, through the actions of Defendant LYNCH TRUST and Defendant Patrick Lynch, had knowledge of, acquiesced to and took part in the perjury and fraud upon the Federal Court system that was committed by Defendant LYNCH TRUST and Defendant Patrick Lynch.

205.     Specifically, Defendant LYNCH TRUST set out to acquire 10.4224% membership interests in TEL through fraudulent court filings. Because Defendant LYNCH TRUST defaulted in repayment of the loan to Defendant AWADA for a portion of the capital contribution, in 2006 Defendant LYNCH TRUST forfeited his right to

acquire such interests and the certificates never issued to him. Due to Defendant LYNCH TRUST'S defaulted loan, Defendant LYNCH TRUST forfeited his right to have such certificates issued, and the interests were never issued in his name.

206.     Defendant FUHR on behalf of herself, Defendant LYNCH TRUST, and the Lynch Family Defendants, attempted to acquire 50% interests in TEL, in exchange for her backing off encouraging RICO investigations of Plaintiff RAHALL.

207.     Notwithstanding the above, in 2013, Defendant LYNCH TRUST, on behalf of himself, Defendant FUHR, and the Lynch Family, executed a sworn Affidavit swearing before the Court that he owned interests in TEL. Furthermore, although Defendant LYNCH TRUST outright refused to honor TEL's capital call for his capital contribution which was required for his interests to issue to him and his right to have such interests issued to him lapsed in 2008, in Defendant LYNCH TRUST'S 2013 Affidavit, he swears that he is a 33.3% interest owner and voting member in TEL.

208.     STATE CRIMINAL LAW regarding false statement to a bankruptcy court.

209.     In addition, after Defendant LYNCH TRUST'S Federal Suit became void due to the bankruptcy court approved settlement between the Plaintiffs and the bankruptcy trustee, Defendant LYNCH TRUST used his uncle, Defendant Patrick Lynch, as a strawperson to commit fraud upon the court by filing the State Suit, alleging an ownership of the very same membership interests that he forfeited in 2006. Defendant LYNCH TRUST never appealed the bankruptcy court order.

210.     Furthermore, although Defendant Patrick Lynch filed the State Suit as a derivative action, he had no standing to bring such action because the small portion of TEL that was issued to him were non-voting interests.

211.     Defendant AWADA, through numerous court filings and judicial admissions made in such actions, committed perjury and fraud upon the Federal Court system.

212.     Specifically, in 2008 Defendant AWADA forfeited his membership interests in TEL after defaulting on his loan obligations to Tucker and Mechan.

213.     Defendant AWADA made numerous judicial admissions acknowledging that he forfeited all his interests in TEL. (See Exhs. "E," "F," "G," "H")

214.     Notwithstanding his judicial admissions and acknowledgement of forfeiting his 96.8224% interests in TEL, Defendant AWADA has continually – as recently as March 2013 – asserted in court filings that he owns the membership interests in TEL. (See Exh. "J," Oppos.)

215.     Plaintiffs have suffered damages, monetary and non-monetary, as a result of Defendants perjury and fraud upon the Federal Court system.

**WHEREFORE,** Plaintiffs demand judgment against the Primary Acting Defendants for perjury and fraud upon the courts, and the resulting monetary damages, consequential damages, punitive damages upon a proper evidentiary showing pursuant to Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT VII – AIDING AND ABETTING TORTIOUS INTERFERRENCE AS TO AIDING AND ABETTING ACTING DEFENDANTS

216.     This is an action for Aiding and Abetting tortious interference with a business relationship as to KEN SHIPALESKY, an individual; ARLENE

217.     SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as

Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual; hereinafter collectively referred to as the Aiding and Abetting Acting Defendants.

218.    Plaintiffs repeat and re-allege the facts and allegations in paragraphs 1 through 125 above, as if fully set forth herein.

219.    The Primary Acting Defendants committed the tort of tortious interference.

220.    The Aiding and Abetting Acting Defendants had actual knowledge of the Primary Acting Defendants' tortious interference. The surrounding circumstances evidence that the Aiding and Abetting Acting Defendants had actual knowledge of the Primary Acting Defendants' tortious interference.

221.    The Aiding and Abetting Acting Defendants rendered substantial assistance in the Primary Acting Defendants' tortious interference.

222.    The Plaintiffs were damaged as a result of said aiding and abetting tortious interference.

223.    The Primary Acting Defendants acted with malice and/or with conscious disregard of the rights of Plaintiffs.

224.    Upon Plaintiffs' belief, the Primary Acting Defendants acted willfully and maliciously and acted intentionally to effect that which was calculated in the ordinary course of events to damage, and which in fact did damage, Plaintiffs in their property or trade, and such actions were malicious in the law, were done without just cause or excuse, and are therefore actionable.

**WHEREFORE**, Plaintiffs demand judgment against the Aiding and Abetting Acting Defendants for aiding and abetting tortious interference with Plaintiffs' actual and prospective business relationship with IGT and WMS, monetary damages, consequential damages, punitive damages upon a proper evidentiary showing pursuant to Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT VIII – AIDING AND ABETTING ABUSE OF PROCESS AS TO AIDING AND ABETTING ACTING DEFENDANTS

225.     This is an action for Aiding and Abetting Abuse of Process as to KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual; and TIMOTHY S. CORY hereinafter collectively referred to as the Aiding and Abetting Acting Defendants.

226.     Plaintiffs repeat and re-allege the facts and allegations in paragraphs 1 through 125 above, as if fully set forth herein.

227.     The Primary Acting Defendants Committed the Tort of Abuse of Process

228.     The Aiding and Abetting Acting Defendants had actual knowledge of the Abuse of Process committed by the Primary Acting Defendants. Upon Plaintiffs' belief, the surrounding circumstances evidence that the Aiding and Abetting Acting Defendants had

actual knowledge of the commitment of the tort violation of Abuse of Process on the part of the Primary Acting Defendants.

229.     The Aiding and Abetting Acting Defendants rendered substantial assistance in the commitment of the Abuse of Process tort violation committed by the Primary Acting Defendants.

230.     The Plaintiffs were damaged as a result of the aiding and abetting the abuse of process.

231.     The Primary Acting Defendants acted with malice and/or with conscious disregard of the Plaintiff's rights.

232.     Upon Plaintiffs' belief, the Primary Acting Defendants acted willfully and maliciously and acted intentionally to effect that which was calculated in the ordinary course of events to damage, and which in fact did damage, the Plaintiffs' in their property or trade, was malicious in the law, was done without just cause or excuse, and is therefore actionable.

**WHEREFORE**, Plaintiffs demand judgment against the Aiding and Abetting Acting Defendants, namely, KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual, STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual, for aiding and abetting Abuse of Process and the resulting monetary damages, consequential damages, and punitive damages upon a proper evidentiary showing pursuant to Florida Statutes

§768.72, pre-and post-judgment interest, court costs, attorney's fees, and such other and further relief as this Honorable Court deems just and proper.

## COUNT IX-AIDING AND ABETTING CIVIL EXTORTION PURSUANT TO FLORIDA STATUTES §§ 772.103 AND 772.104 AND CIVIL REMEDIES FOR CRIMINAL PRACTICES ACT ("CRCPA") AS TO AIDING AND ABETTING ACTING DEFENDANTS

233.    This is an action for Aiding and Abetting Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and Civil Remedies for Criminal Practices Act ("CRCPA") as to KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual; hereinafter collectively referred to as the Aiding and Abetting Acting Defendants.

234.    Plaintiffs repeat and re-allege the facts and allegations in paragraphs 1 through 125 above, as if fully set forth herein.

235.    The Primary Acting Defendants committed the tort of Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and Civil Remedies for Criminal Practices Act ("CRCPA").

236.    The Aiding and Abetting Acting Defendants had actual knowledge of the Primary Acting Defendants' Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104

and Civil Remedies for Criminal Practices Act ("CRCPA"). Upon Plaintiffs' belief, the surrounding circumstances evidence that the Aiding and Abetting Acting Defendants had actual knowledge of the Primary Acting Defendants' Civil Extortion and violations of CRCPA.

237.     The Aiding and Abetting Acting Defendants rendered substantial assistance in the Primary Acting Defendants' Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and Civil Remedies for Criminal Practices Act ("CRCPA").

238.     The Plaintiffs were damaged as a result of said aiding and abetting Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and Civil Remedies for Criminal Practices Act ("CRCPA").

239.     The Primary Acting Defendants acted with malice and/or with conscious disregard of the rights of Plaintiffs.

240.     Upon Plaintiffs' belief, the Primary Acting Defendants acted willfully and maliciously and acted intentionally to effect that which was calculated in the ordinary course of events to damage, and which in fact did damage, Defendants actions concerning property or trade, was malicious in the law, was without just cause or excuse, and amounted to legal coercion, hate crimes, and extortion and is therefore actionable.

**WHEREFORE**, Plaintiffs demand judgment against the Aiding and Abetting Acting Defendants, namely, KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust; DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an

individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual, for

aiding and abetting Civil Extortion pursuant to Florida Statutes §§ 772.103 and 772.104 and

Civil Remedies for Criminal Practices Act ("CRCPA") and the resulting monetary damages,

consequential damages, and punitive damages upon a proper evidentiary showing pursuant to

Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, and such

other and further relief as this Honorable Court deems just and proper.

## COUNT X- AIDING AND ABETTING PERJURY AND FRAUD UPON THE COURTS AS TO AIDING AND ABETTING ACTING DEFENDANTS

241.    This is an action for Aiding and Abetting Perjury and Fraud Upon the Courts as to

KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an individual; VICKI

LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH, an

individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust;

DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an

individual; TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual;

STEPHEN ORTIZ, an individual; LEIGHANN WOLKOWSKI, an individual; and

BRENT FUHR, an individual; hereinafter collectively referred to as the Aiding and

Abetting Acting Defendants.

242.    Plaintiffs repeat and re-allege the facts and allegations in paragraphs 1 through

125 above, as if fully set forth herein.

243.    The Primary Acting Defendants committed the torts of perjury and fraud upon the

courts and Plaintiffs.

244.    The Aiding and Abetting Acting Defendants had actual knowledge of the perjury

and fraud upon the courts and the Plaintiffs by the Primary Acting Defendants. Upon

Plaintiffs' belief, the surrounding circumstances evidence that the Aiding and Abetting

Acting Defendants had actual knowledge of the Primary Acting Defendants' perjury and

fraud upon the courts.

245.     The Aiding and Abetting Acting Defendants rendered substantial assistance in the

Primary Acting Defendants' perjury and fraud upon the courts and Plaintiffs.

246.     The Plaintiffs were damaged as a result of said aiding and abetting perjury and

fraud upon the courts as its illegal conversion and loss of property.

247.     That Primary Acting Defendants acted with malice and/or with conscious

disregard of the rights of Plaintiffs.

248.     Upon Plaintiffs' belief, the Primary Acting Defendants acted willfully and

maliciously and acted intentionally to effect that which was calculated in the ordinary

course of events to damage, and which in fact did damage, the Plaintiffs in their property

or trade, was malicious in the law, was without just cause or excuse, and is therefore

actionable.

**WHEREFORE**, Plaintiffs demand judgment against the Aiding and Abetting Acting

Defendants, namely, KEN SHIPALESKY, an individual; ARLENE SHIPALESKY, an

individual; VICKI LYNCH, an individual; MICHAEL LYNCH, an individual; JULIE LYNCH,

an individual; WILLIAM M. ERNST, as Trustee of the William M. Ernst Revocable Trust;

DAVID AUSTIN, an individual; JOHN FUHR, an individual; GLENN OHNO, an individual;

TIFFANY OHNO, an individual; CHRISTINA ORTIZ, an individual; STEPHEN ORTIZ, an

individual; LEIGHANN WOLKOWSKI, an individual; and BRENT FUHR, an individual, for

aiding and abetting perjury and fraud upon the courts, and the resulting monetary damages,

consequential damages, and punitive damages upon a proper evidentiary showing pursuant to

Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's fees, and such other and further relief as this Honorable Court deems just and proper.

## COUNT XI- DECLARATORY RELIEF AND DAMAGES

**AS TO PRIMARY ACTING DEFENDANTS and Does 1 through 20 are companies formed under the laws of the State of Nevada or other states who have conspired with, assisted or worked with Defendants.**

249.     Plaintiff RAHALL repeats and realleges the facts allegations in paragraphs 1 through 125 above, as if set forth fully herein.

250.     This is an action for Declaratory Relief as to JOHN LYNCH, III, individually; JOHN LYNCH, III, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; KELLIE FUHR, individually; KELLIE FUHR, as Trustee for the JOHN LYNCH and Kellie FUHR Family Trust; YEHIA AWADA, an individual; PATRICK LYNCH, an individual; JOHN LYNCH, JR., as Trustee for the LYNCH TRUST dated August 26, 1997; hereinafter collectively referred to as the Primary Acting Defendants and Does 1 through 20 are companies formed under the laws of the State of Nevada or other states who have conspired with, assisted or worked with Defendants.

251.     TYCHE ENTERTAINMENT LLC was organized in September 2004 by AWADA. The Company's principal assets were patents and intellectual property rights related to the gaming industry, which the Company licensed to the gaming industry.

252.     RAHALL was the original Manager of TYCHE ENTERTAINMENT LLC and has remained such ever since.

253.     On August 14, 2004, AWADA agreed to give Plaintiffs in this action a 10.4224% Membership Interest in the soon to be organized TYCHE ENTERTAINMENT LLC for

$1,926,000. AWADA further agreed to loan Plaintiffs $226,000 of Plaintiffs' capital contribution to TYCHE under a Secured Promissory Note ("Note"). The Note pledged Plaintiffs' 10.4224% Membership Interest in TYCHE as security for the loan.

254.     As of February 14, 2006, Plaintiffs were in default under the Note, and forfeited their Membership Interest in TYCHE to AWADA.

255.     On August 30, 2005, AWADA needed funds to finance ongoing litigation relating to the patents and operational expenses. AWADA, therefore, borrowed $1,750,000 from Barry Tucker ("Tucker") pursuant to a Promissory Note ("AWADA Note") and a Membership Pledge Agreement for TYCHE Entertainment, LLC and Yehia AWADA ("Pledge Agreement"). Pursuant to the Pledge Agreement, AWADA pledged his 86.4% Membership Interest in TYCHE ENTERTAINMENT LLC and any later acquired interests as security for the loan. At the time of the loan, TUCKER took physical possession of AWADA's Membership Certificate in TYCHE ENTERTAINMENT LLC.

256.     AWADA subsequently defaulted on the 2005 AWADA Note and in November 2008, and as a result AWADA forfeited his entire Membership Interest in TYCHE ENTERTAINMENT LLC to TUCKER.

257.     After TUCKER received AWADA's Membership Interests in TYCHE ENTERTAINMENT LLC, TUCKER assigned the Note and the Membership Interests to TYCHE, LLC. TYCHE, LLC thereupon became the sole Member and owner of TYCHE Entertainment.

258.     On October 3, 2008, AWADA was deposed in the litigation involving the patent rights, In re: *ShuffleMaster, Inc. v. AWADA*, Case No. 2:04-cv-980, in the United States District for the District of Nevada. In that Deposition, AWADA testified under oath that

he had transferred his interests in TYCHE ENTERTAINMENT LLC and all his

intellectual property to Tucker.

259.     AWADA's financial difficulties continued to deepen and in October 2009,

AWADA filed a Chapter 11 personal bankruptcy as Case No. 09-30585.

260.     On Schedule B-Personal Property to his bankruptcy Petition, AWADA was

required to list the personal property he owned. Under penalty of perjury, AWADA listed

as his only interest in businesses owned, his interest in Gaming Entertainment, Inc.

AWADA did not identify any interest in TYCHE ENTERTAINMENT LLC.

261.     In his sworn testimony at the 341 Meeting of Creditors in his bankruptcy,

AWADA likewise denied owning any interest in any business other than Gaming

Entertainment, Inc.

262.     In 2009, AWADA also filed a bankruptcy petition for Gaming Entertainment, Inc.

as Case No. 09-32258. Plaintiffs herein initiated an adversary proceeding in the Gaming

Entertainment bankruptcy asserting claims to the intellectual property based on their

long-since forfeited Membership in TYCHE ENTERTAINMENT LLC.

263.     AWADA's deposition was taken in the Gaming Entertainment bankruptcy

proceedings on April 3, 2013, where AWADA testified that all the intellectual property at

issue was owned by Mechan and Tucker. Receiver took away the legal rights of Mechan

and Tucker to the intellectual property.

264.     On August 30, 2013, the Bankruptcy Court approved a Settlement between the

Gaming Entertainment Bankruptcy Trustee and Intervenors (TYCHE LLC) wherein the

Trustee assigned all the Estate's interest in the intellectual property to Intervenors. The

Settlement was opposed by Plaintiffs and AWADA.

265.    Commencing in July 2013, AWADA and his accomplices began filing changes to the Registered Agent and Manager of TYCHE ENTERTAINMENT LLC with the office of the Nevada Secretary of State, purporting to appoint AWADA and his nominees as the Registered Agent and Manager of TYCHE ENTERTAINMENT LLC. None of these changes were authorized by any of the Intervenors. When Intervenors became aware of AWADA's actions, Intervenors refiled the correct identification of the Manager and Registered Agent with the Secretary of State. AWADA, however, repeatedly filed false and fraudulent lists of Managers and Registered Agents with the Secretary of State.

266.    A "SETTLEMENT AGREEMENT AND MUTUAL RELEASE" was executed and stated in part: "This Settlement Agreement and Mutual Release ("Agreement") was between LENARD E. SCHWARTZER, as Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of GAMING ENTERTAINMENT, INC. (the "Debtor"), and MONIER RAHALL, SHAWN MECHAN, BARRY TUCKER, TYCHE ENTERTAINMENT, LLC, TYCHE LLC, GAMING ENT LLC, and GAMING ENTERTAINMENT TYCHE, LLC." TYCHE LLC paid $100,000 to the Trustee on behalf of all the foregoing persons and companies to release all claims against TYCHE ENTERTAINMENT LLC.

267.    The SETTLEMENT AGREEMENT concerned all of the Trustee's claims to the patents and trademarks (the "IP") listed in Exhibit K, and all of the Trustee's pending claims in the Litigation against the AWADA Defendants, was released and assigned to TYCHE LLC, including all claims against any third parties (including casino operators, gaming manufacturers, and other licensees) related to use, ownership and income streams from the IP, was assigned to TYCHE LLC.

268.     That a Court Order granting Trustee's "Motion for Approval of Settlement Agreement" is attached hereto as Exhibit M.

269.     An actual bona fide controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights, duties, and interests regarding the Membership in the Companies and rights of the parties.

270.     The controversy centers on Plaintiffs' ownership of the interest and Defendant's illegal control, dominion and conversion of the ownership.

271.     The Defendants actions have resulted in damaged to the Plaintiff's in an amount which exceeds $5,000,000.

272.     Plaintiff's rights, obligations and ownership rights has been damaged, clouded or otherwise illegally taken away due to the legal coercion, intimidation, hate speech and fraud of the Defendants.

273.     A judicial declaration is necessary and appropriate at this time and under the circumstances so that Plaintiff may assert and retain rights, obligations and ownership rights must be clearly determined by declaration of the Court.

274.     All adverse interests to this claim are before this Court by proper process.

275.     Plaintiffs' have no adequate, complete remedy at law.

276.     Additionally, an actual bona fide controversy has arisen and now exists between Plaintiffs and Defendants concerning the SETTLEMENT AGREEMENT and their respective rights, duties, and interests regarding the SETTLEMENT AGREEMENT.

277.     Plaintiff's rights, obligations and ownership rights to the Trustee's claims to the patents and trademarks (the "IP") listed in the Settlement Agreement, and all the pending

claims in the Litigation against the parties listed in the Settlement Agreement, has been clouded, illegal converted, or fraudulently taken by the Defendants.

278.    A judicial declaration is necessary and appropriate at this time and under the circumstances so that Plaintiffs may assert and retain rights, obligations and ownership rights to the claims to the \ patents and trademarks (the "IP"), and damages litigation against the Defendants.

279.    All adverse interests to this claim are before this Court by proper process.

280.    Plaintiffs have no adequate, complete remedy at law.

281.    Plaintiffs are entitled to the Court's declaration and judgment that Defendants have no Membership Interests in TYCHE ENTERTAINMENT LLC and are not Members of that Company.

282.    Plaintiffs are entitled to the Court's declaration and judgment that JOHN LYNCH is *not* the Manager or Managing Member of TYCHE ENTERTAINMENT LLC, and that he exercised rights that he didn't have, and fraudulently acted to the detriment of TYCHE LLC.

283.    Plaintiffs are entitled to the Court's declaration and judgment that AWADA has no Membership Interests in TYCHE ENTERTAINMENT LLC and is not a member of that Company.

284.    Plaintiffs are entitled to the Court's declaration and judgment that AWADA is not the Manager, Managing Member or Registered Agent of TYCHE ENTERTAINMENT LLC and has no right to appoint or elect those positions.

285.    Plaintiffs are entitled to the Court's declaration and judgment that RAHALL is the Manager of TYCHE ENTERTAINMENT LLC.

286.     Plaintiffs are entitled the Court's declaration and judgment that all of the

Trustee's claims to the following patents and trademarks (the "IP"), and all of the

Trustee's pending claims in the Litigation against the AWADA Defendants, were

released and assigned to TYCHE LLC, including and all claims against any third parties

(including casino operators, gaming manufacturers, and other licensees) related to use,

ownership and income streams from the IP, were legally assigned to TYCHE LLC.

**WHEREFORE**, Plaintiffs demand judgment against the Primary Acting Defendants and Does 1

through 20 are companies formed under the laws of the State of Nevada or other states who have

conspired with, assisted or worked with Defendants for Declaratory Relief and the resulting

monetary damages, consequential damages, punitive damages upon a proper evidentiary showing

pursuant to Florida Statutes § 768.72, pre- and post-judgment interest, court costs, attorney's

fees, together with such other and further relief as this Honorable Court deems just and proper,

## COUNT XII- DAMAGES AGAINST TIMOTHY S. CORY INDIVIDUALLY FOR

## BREACH OF FIDUCIARY DUTY

287.     Plaintiffs RAHALL and TUCKER repeat and reallege the facts allegations in

paragraphs 1 through 125 above, as if set forth fully herein.

288.     This is an action for damages as to TIMOTHY S. CORY, individually, for breach

of fiduciary duty to Plaintiffs.

289.     On or about, March 2019 Plaintiffs became aware that CORY filed final tax

returns related to the dissolution of the TYCHE ENTERTAINMENT LLC and its assets

that affect the rights and responsibilities of Plaintiffs.

290.     CORY had a duty to properly investigate and seek a tax advisor in his duties as a

receiver.

291.      CORY failed to properly investigate the financial matters through communications with the Plaintiffs and invested members in the company CORY dissolved.

### REFUSAL TO PROVIDE DISSOLUTION AND TAX INFORMATION

292.      On March 18, 2019 RAHALL as a follow up to a phone conversation, RAHALL sent CORY an email requesting all tax information regarding the Receivership and dissolution of the company.

293.      CORY responded from an email that stated he was Associate Area Legal Counsel – Asia for LDS Church and stated: "Mr. RAHALL: I will not be responding to your request for information regarding TYCHE ENTERTAINMENT LLC; 1. Mr. AWADA is the authorized representative for TYCHE Entertainment, LLC. You should direct your request to Mr. AWADA."

294.      Clearly the response refuses to provide the legal information and fails to recognize the parties with the actual legal authority.

295.      Further, the extortionate text sent the next day to RAHALL from AWADA proves CORY communicated with AWADA.

296.      CORY further responded to RAHALL's second request by stating: "Mr. RAHALL: I do not respond to parties who do not provide a mailing address; 2. You are not a person authorized to receive information regarding TYCHE ENTERTAINMENT LLC; 3. Mr. AWADA is the authorized representative for TYCHE Entertainment, LLC. You should direct your request to Mr. AWADA."

297.      RAHALL sent a follow up email to inform CORY that the communications with him are confidential stating: "Mr. CORY, My communications with you are private and

confidential; you have no right to disclose this with 3rd parties who clearly knew the details of our confidential communications. These are private tax matters; my communications are to you as the receiver and do not concern 3rd parties. It's unethical for you to discuss this with 3rd parties."

298.    Plaintiffs contacted CORY to obtain the records to ascertain tax liabilities and whether the reports filed by CORY were correct.

299.    CORY immediately communicated the private confidential request to third parties without consent.

300.    CORY refused to provide the dissolution and tax information to the Plaintiffs and asserted that the Plaintiffs should get the information from AWADA.

301.    In his statements, CORY continues to illegally take away the rights of the Plaintiffs and breach the fiduciary duty he had to the Plaintiffs in the dissolution.

302.    CORY improperly reallocated the contractual rights of the parties when he had no right to do so as a receiver.

303.    Not only did CORY take away the Plaintiffs rights illegally, he continues to financially harm the Plaintiffs by violating their rights withholding critical business documents.

304.    CORY's actions aided and abetted extortion by AWADA by stating to Plaintiffs, and apparently to AWADA, that Plaintiffs must obtain the dissolution and tax documents from AWADA.

305.    After the dissolution documents were requested directly from CORY on Monday March 18, 2019, the very next day on Tuesday, March 19, 2019, AWADA sent a text containing threats of extortion and blackmail to RAHALL stating: "If you want all the

records including the receiver's findings. You need to sign over our house in to rightful owner, that would be your sister Lamia AWADA. Otherwise you may be very surprised to find all this information on the internet or in the wrong hands…. including the IRS PAY OFF THE FUK $280 K loan u took on our house and turn the house over then u can be on ur fuking way."

306.     Clearly CORY had communicated the details of the request to AWADA without any permission to do so, which led to an extortion email from AWADA threatening to cause harm to RAHALL if he did not turn over property that did not belong to AWADA, and that AWADA had no legal rights to.

307.     CORY's act of contacting third parties and communicating confidential information to AWADA and AWADA's counsel, was a breach of his fiduciary duty to Plaintiffs and an ethical violation.

308.     CORY breached his fiduciary duty of confidentiality of communications, and disclosed details of Plaintiffs conversation with him to unauthorized third parties who held no legal interest at the time of dissolution or at present time.

309.     Notwithstanding that AWADA no longer owned any membership interests in TEL as of 2008, to which he admitted and acknowledged on numerous occasions in judicial admissions, official sworn testimony, and sworn documents, CORY communicated the confidential request to AWADA, and then AWADA made extortionate threats in relation to such interests.

310.     Therefore, CORY breached his fiduciary duty to the Plaintiffs and aided and abetted the extortion of AWADA.

**WHEREFORE**, Plaintiffs demand judgment against TIMOTHY S. CORY for his actions resulting monetary damages, consequential damages, punitive damages, pre- and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

### COUNT XIII- DAMAGES AGAINST TIMOTHY S. CORY INDIVIDUALLY FOR ILLEGAL CONVERSION OF ASSETS

311.    Plaintiffs RAHALL and TUCKER repeat and reallege the facts allegations in paragraphs 1 through 125 above, as if set forth fully herein.

312.    This is an action for damages as to TIMOTHY S. CORY, individually, for conversion of assets.

313.    CORY, under color of law, and with no legal right to do so, improperly interfered and changed the contractual rights of the parties when he had no right to do so as a receiver.

314.    CORY had no control or dominion over Plaintiff's assets and did not have any right to exercise over the assets. A receivership court may not impair the obligations of a contract, and a receiver may do nothing to impair a contract that is between the parties to the contract.

315.    CORY acted outside the scope and authority of a receiver because he changed existing contractual relationships and improperly determined the rights between the parties pursuant to an existing contract reallocating interest in the property that was the subject of that contract. Therefore, CORY is personally responsible for his actions.

316.    Plaintiffs' appealed CORY's appointment as receiver and this caused CORY to express his anger and he asserted that if Plaintiffs dropped the appeal he would work with

Plaintiffs and address their interest and concerns. CORY led the Plaintiff's to believe if they dismissed their appeal, he would uphold his fiduciary duty as a trustee to protect the interest of all interested parties and property of the in the receivership.

317.     Not only did CORY take away the Plaintiffs rights illegally, he continues to financially harm the Plaintiffs by violating their rights withholding critical business dissolution documents which Plaintiffs must obtain to avoid severe financial consequences.

318.     Plaintiffs have requested information from CORY. And CORY has refused to provide it causing continued and unquantifiable harm.

319.     Notwithstanding that AWADA no longer owned any membership interests in TEL as of 2008, to which he admitted and acknowledged on numerous occasions in judicial admissions, official sworn testimony, and sworn documents, CORY continues to communicate with AWADA as if he has the contractual rights.

320.     Therefore, CORY illegally changed the contracts between the parties without any legal right to do so causing damages to the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against TIMOTHY S. CORY for his actions resulting monetary damages, consequential damages, punitive damages, pre- and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT XIIII- DAMAGES AGAINST TIMOTHY S. CORY INDIVIDUALLY FOR FILING FALSE TAX RETURNS

321.     Plaintiffs RAHALL and TUCKER repeat and reallege the facts allegations in paragraphs 1 through 125 above, as if set forth fully herein.

322.     This is an action for damages as to TIMOTHY S. CORY, individually, for filings false tax returns related to the dissolution of TYCHE ENTERTAINMENT LLC with the Internal Revenue Service which created damages to the Plaintiffs.

323.     On or about, March 2019 Plaintiffs became aware that CORY filed final tax returns related to the dissolution of the TYCHE ENTERTAINMENT LLC and its assets that affected the rights and responsibilities of Plaintiffs.

324.     Plaintiffs believe, and therefore allege, that CORY filed false tax returns that created tax liabilities of Plaintiffs that did not exist.

325.     The filing of false tax returns occurred because CORY did not fulfill his duty to properly investigate and seek a tax advisor in his duties as a receiver, and he failed to properly investigate prior to filing tax returns.

326.     CORY failed to communicate with the Plaintiffs, who had interest in the tax matters, and were affected by CORY's lack of proper due diligence prior to filing tax returns as the assets and liabilities and legal ownership of the company were not properly represented on the tax returns or properly allocated.

327.     CORY communicated only with Defendants AWADA and LYNCH, who had no rights to the assets, or proper knowledge of the assets and liabilities of the company, and/or intentionally made false statements upon which CORY did not investigate and relief upon in filing the false tax returns.

328.     CORY failed to communicate with the Plaintiffs who had invested and lost millions of dollars in the Company.

329.     Due to CORY's failure to execute his duties as a Receiver properly and failure to follow all the IRS requirements of receivers who must file final tax returns, Plaintiffs have been financially harmed.

330.     Further, CORY has refused to provide the Plaintiffs with the returns he filed causing damage to the Plaintiffs.

**REFUSAL TO PROVIDE DISSOLUTION AND TAX INFORMATION**

331.     On March 18, 2019 RAHALL as a follow up to a phone conversation, RAHALL sent CORY an email requesting all tax information regarding the Receivership and dissolution of the company.

332.     CORY responded from an email that stated he was Associate Area Legal Counsel – Asia for LDS Church and stated: "Mr. RAHALL: I will not be responding to your request for information regarding TYCHE ENTERTAINMENT LLC; 1. Mr. AWADA is the authorized representative for TYCHE Entertainment, LLC. You should direct your request to Mr. AWADA."

333.     Clearly the response refuses to provide the legal information and fails to recognize the parties with the actual legal authority.

334.     Further, the extortionate text sent the next day to RAHALL from AWADA proves CORY communicated with AWADA.

335.     CORY further responded to RAHALL's second request by stating: "Mr. RAHALL: I do not respond to parties who do not provide a mailing address; 2. You are not a person authorized to receive information regarding TYCHE ENTERTAINMENT LLC; 3. Mr. AWADA is the authorized representative for TYCHE Entertainment, LLC. You should direct your request to Mr. AWADA."

336.     RAHALL sent a follow up email to inform CORY that the communications with him are confidential stating: "Mr. CORY, My communications with you are private and confidential; you have no right to disclose this with 3rd parties who clearly knew the details of our confidential communications. These are private tax matters; my communications are to you as the receiver and do not concern 3rd parties. It's unethical for you to discuss this with 3rd parties."

337.     Plaintiffs contacted CORY to obtain the records to ascertain tax liabilities and whether the reports filed by CORY were correct.

338.     CORY immediately communicated the private confidential request to third parties without consent.

339.     CORY refused to provide the dissolution and tax information to the Plaintiffs and asserted that the Plaintiffs should get the information from AWADA.

340.     CORY's actions show an intent to knowingly and willing conceal his fraudulent actions as a Receiver.

341.     44. CORY's actions have caused damages to the Plaintiffs and continue to cause damage to the Plaintiffs.

342.     45. Plaintiffs cannot mitigate those damages due to CORY's concealment of the tax records.

343.     46. CORY illegally took away the contractual rights of the Plaintiffs, and now states that pursuant to his taking away the contractual rights at dissolution, he states he can withhold records from the Plaintiffs.

344.     47. CORY intentionally is financially harming the Plaintiffs violating their legal rights and withholding critical business documents.

345.       48. CORY's stated that Plaintiffs must obtain the dissolution and tax documents from AWADA. AWADA has not rights to the business documents or tax returns as he held no interest at dissolution, or prior to the Receivership.

346.       49. Notwithstanding that AWADA no longer owned any membership interests in TEL *as of 2008*, to which he admitted and acknowledged on numerous occasions in judicial admissions, official sworn testimony, and sworn documents, CORY still maintains that AWADA is the party with authorization for TYCHE ENTERTAINMENT LLC and that he holds legal interest he does not possess.

347.       50. Therefore, CORY is personally liable for his actions causing damages to the Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment against TIMOTHY S. CORY for his actions resulting monetary damages, consequential damages, punitive damages, pre-and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

## COUNT XV- DECLARATORY RELIEF AGAINST TIMOTHY S. CORY

348.       Plaintiffs RAHALL and TUCKER repeat and reallege the facts allegations in paragraphs 1 through 125 above, as if set forth fully herein.

349.       Plaintiffs seek Declaratory Relief against TIMOTHY S. CORY, individually, to obtain the dissolution documents of TYCHE ENTERTAINMENT LLC and all tax returns and related documents executed by CORY and provided to the Internal Revenue Service and any other third parties.

350.       Plaintiffs seek Declaratory Relief against TIMOTHY S. CORY, individually, to obtain all investigative documents, tax advisor communications, and communication with

third parties who did not have legal rights to those communications regarding the dissolution documents of TYCHE ENTERTAINMENT LLC.

351.    Plaintiffs seek Declaratory Relief against TIMOTHY S. CORY, individually, to obtain all tax returns and related documents created, executed, and/or submitted to the Internal Revenue Service related to his dissolution of TYCHE ENTERTAINMENT LLC.

352.    On or about, March 2019 Plaintiffs became aware that CORY filed final tax returns related to the dissolution of the TYCHE ENTERTAINMENT LLC and its assets that affected the rights and responsibilities of Plaintiffs.

353.    Plaintiffs believe, and therefore allege, that CORY filed false tax returns that created tax liabilities of Plaintiffs that did not exist.

354.    The filing of false tax returns occurred because CORY did not fulfill his duty to properly investigate and seek a tax advisor in his duties as a receiver, and he failed to properly investigate prior to filing tax returns.

355.    CORY failed to communicate with the Plaintiffs, who had interest in the tax matters, and were affected by CORY's lack of proper due diligence prior to filing tax returns as the assets and liabilities and legal ownership of the company were not properly represented on the tax returns or properly allocated.

356.    CORY communicated only with Defendants AWADA and LYNCH, who had no rights to the assets, or proper knowledge of the assets and liabilities of the company, and/or intentionally made false statements upon which CORY did not investigate and relief upon in filing the false tax returns.

357.    CORY failed to communicate with the Plaintiffs who had invested and lost millions of dollars in the Company.

358.     Due to CORY's failure to execute his duties as a Receiver properly and failure to follow all the IRS requirements of receivers who must file final tax returns, Plaintiffs have been financially harmed.

359.     Further, CORY has refused to provide the Plaintiffs with the returns he filed causing damage to the Plaintiffs.

**REFUSAL TO PROVIDE DISSOLUTION AND TAX INFORMATION**

360.     On March 18, 2019 RAHALL as a follow up to a phone conversation, RAHALL sent CORY an email requesting all tax information regarding the Receivership and dissolution of the company.

361.     CORY responded from an email that stated he was Associate Area Legal Counsel – Asia for LDS Church and stated: "Mr. RAHALL: I will not be responding to your request for information regarding TYCHE ENTERTAINMENT LLC; 1. Mr. AWADA is the authorized representative for TYCHE Entertainment, LLC. You should direct your request to Mr. AWADA."

362.     This response refuses to provide the legal information and fails to recognize the parties with the actual legal authority.

363.     Further, the extortionate text sent the next day to RAHALL from AWADA proves CORY communicated with AWADA.

364.     CORY further responded to RAHALL's second request by stating: "Mr. RAHALL: I do not respond to parties who do not provide a mailing address; 2. You are not a person authorized to receive information regarding TYCHE ENTERTAINMENT LLC; 3. Mr. AWADA is the authorized representative for TYCHE Entertainment, LLC. You should direct your request to Mr. AWADA."

365.    RAHALL sent a follow up email to inform CORY that the communications with him are confidential stating: "Mr. CORY, My communications with you are private and confidential; you have no right to disclose this with 3rd parties who clearly knew the details of our confidential communications. These are private tax matters; my communications are to you as the receiver and do not concern 3rd parties. It's unethical for you to discuss this with 3rd parties."

366.    Plaintiffs contacted CORY to obtain the records to ascertain tax liabilities and whether the reports filed by CORY were correct.

367.    CORY immediately communicated the private confidential request to third parties without consent.

368.    CORY refused to provide the dissolution and tax information to the Plaintiffs and asserted that the Plaintiffs should get the information from AWADA.

369.    CORY's actions show an intent to knowingly and willing conceal his fraudulent actions as a Receiver.

370.    CORY's actions have caused damages to the Plaintiffs and continue to cause damage to the Plaintiffs.

371.    Plaintiffs cannot mitigate those damages due to CORY's concealment of the tax records.

372.    CORY illegally took away the contractual rights of the Plaintiffs, and now states that pursuant to his taking away the contractual rights at dissolution, he states he can withhold records from the Plaintiffs.

373.    CORY intentionally is financially harming the Plaintiffs violating their legal rights and withholding critical business documents.

374.     CORY's stated that Plaintiffs must obtain the dissolution and tax documents from AWADA. AWADA has not rights to the business documents or tax returns as he held no interest at dissolution, or prior to the Receivership.

375.     Notwithstanding that AWADA no longer owned any membership interests in TEL *as of 2008*, to which he admitted and acknowledged on numerous occasions in judicial admissions, official sworn testimony, and sworn documents, CORY still maintains that AWADA is the party with authorization for TYCHE ENTERTAINMENT LLC and that he holds legal interest he does not possess.

376.     Therefore, Plaintiffs have no available legal remedy but to seek a court Order for CORY to turn over all records which are causing damages to the Plaintiffs due to his refusal to provide the records.

**WHEREFORE**, Plaintiffs seek Declaratory Relief against TIMOTHY S. CORY for his actions resulting monetary damages, consequential damages, punitive damages, pre- and post-judgment interest, court costs, attorney's fees, together with such other and further relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiffs herby demand a jury trial on all questions allowable by jury.


Dated October 9, 2020.

                                           ___/s/ Gabriel Strine_____
                                           FBN 0113137
                                           Strine Legal Services, PLLC
                                           16105 Craigend PL
                                           Odessa, FL 33556
                                           (813) 373-3217
                                           grstrine@strinelegalservices.com

## EXHIBIT LIST

**Exhibit**

A   Tyche Entertainment, LLC ("TEL") Operating Agreement

B   Secured Promissory Note reflecting the loan and Defendant Lynch's investment in TEL

C   February 2006 correspondence between Defendant Lynch and Defendant Awada regarding Defendant Lynch's default and the forfeiture of his interest in TEL

D   Agreement and Pledge Agreement between Tucker and Defendant Awada

E   Excerpt of the Transcript of Defendant Awada's October 3, 2008 Deposition reflecting Defendant Awada's forfeiture of his Membership Interests in TEL

F   Defendant Awada's Schedule B-Personal Property

G   Excerpt of the transcript from Defendant Awada's 341 Meeting testimony in his personal bankruptcy

H   Excerpt of Defendant Awada's April 3, 2013 deposition transcript in GEI bankruptcy

I   GEI bankruptcy court's August 29, 2013 order approving the settlement and referencing the oppositions filed by the herein-Defendants Awada and Lynch

J   Defendant Awada Opposition to the GEI bankruptcy trustee's motion to approve settlement

K   Affidavit of John Lynch, III in Support of Defendant Yehia Awada's Opposition to Settlement Agreement

L   Defendants Lynch's and Awada's letter to International Gaming Technologies ("IGT")